LANDRY, Judge.
In this action plaintiff Joseph A. An-geron, individually and as administrator of the estate of his minor son, Don David Angeron, seeks recovery of damages from defendant Leonard Guzzino and Marquette Casualty Company (Guzzino’s liability insurer) for personal injuries to plaintiff’s said son and damages to plaintiff’s Pontiac automobile allegedly suffered and sustained in an accident which, according to plaintiff, occurred solely by virtue of the negligent operation of defendant’s Ford automobile by defendant’s minor son, Gerald Charles Guzzino. After trial on the merits the lower court adjudged the Guzzino lad to be free of negligence constituting a proximate cause of the accident, found the Angeron youth guilty of • negligence constituting the sole proximate cause of the accident and rendered judgment dismissing and rejecting plaintiff’s demands. From said adverse judgment plaintiff has prosecuted this appeal.
The accident in question, an intersec-tional collision, involved plaintiff’s Pontiac 4-door sedan being driven by plaintiff’s son, David, approximately 16 years of age, and defendant Guzzino’s 1959 Ford being operated by his son, Gerald Charles, approximately 17 years of age. The locus of the accident in question was the intersection of Fifth Street (Louisiana Highway 666) and U. S. Highway 90, in the Town of Berwick, Louisiana.
■ Shortly after midnight on October 24, 1959, Gerald Charles Guzzino was driving his father’s automobile easterly along U. S. Plighway 90 within the municipal limits of the Town of Berwick, while, at the same time, David Angeron was proceeding southerly along Fifth Street intending to turn left on Highway 90 and proceed easterly thereon. Angeron stopped before entering the highway, observed for approaching traffic to both the east and west and when he had almost completely gained the eastbound traffic lane his vehicle, traveling approximately 10-12 miles per hour, was struck in the rear by the right side of the front of the eastbound Ford. For reasons which will hereinafter become obvious it is desired to point out that the intersection in question was controlled by an electric semaphore traffic signal of the type which has become, quite common upon our -public streets and highways. Although the signal was of the type which automatically changed from a green “go” to a yellow “caution” to a red “stop”, plaintiff contends that at the time of the accident it was so adjusted that it continuously flashed an alternate on and off yellow or caution light to traffic proceeding southerly along Fifth Street and a red or “stop” signal to motorists proceeding easterly along Highway 90. Despite the fact plaintiff contends the red or stop signal was being flashed to *671 vehicles upon' Highway 90 and ' only a yellow or caution signal confronted a driver traveling southerly on Fifth Street, plaintiff concedes Highway 90 is the superior thoroughfare and ordinarily enjoys the right of way at the intersection in question.
Plaintiff maintains that the accident resulted solely from the negligence of young Guzzino in traveling at an excessive rate of speed, failing to maintain a proper lookout, failing to stop for the red or stop flashing signal and failing to yield the right of way to the Angeron youth who had preempted the intersection. Alternatively, plaintiff pleads last clear chance. Conversely, defendant maintains the accident was caused solely by the negligence of the driver of the Pontiac in not maintaining a proper lookout, failing to yield the right of way to the driver of the Ford who was traveling upon the favored roadway and driving into the intersection when the Ford was so near it was patently unsafe to do so. Alternatively, defendant pleads the contributory negligence of David An-geron in the respects mentioned.
It is undisputed that plaintiff’s minor son David, accompanied by seven of his teenage friends (three of whom were seated side by side upon the front seat along'with their host), was driving the Pontiac automobile southerly along Fifth Street with the intention of turning left on Highway 90. When he reached the intersection he stopped just north of the paved portion of Highway 90 (which roadway is approximately 30 feet in width) for the purpose óf observing whether traffic was approaching upon Plighway 90. After looking in both directions and observing no approaching traffic from either the left or right, Angeron turned left onto the highway and as he had practically completed his turn and almost entirely gained the eastbound lane of the highway, his vehicle was struck in the rear by the Ford driven by defendant’s son. It is frankly conceded by the Angeron lad that although he - looked in both directions he did not see the oncoming Ford nor did he note its lights. The testimony of the Angeron boy shows that he was totally unaware of the approach of the Guzzino vehicle until just a split second prior to the impact when he heard the application of its brakes. According to Angeron he heard the squeal of brakes and instantly the collision occurred. The majority of the .guest passengers in the An-geron vehicle suffered post-traumatic amnesia which obliterated all recollection of the events immediately preceding the collision. Those who did remember the circumstances which transpired just prior to the accident testified they did not recall seeing the lights of the approaching Guz-zino car. There is no dispute that the maximum lawful speed for vehicles in the Town of Berwick is 35 miles per hour.
The driver of defendant’s automobile testified that he was on his way to Morgan City for the purpose of getting something to eat after having attended a football game at Patterson, a small community approximately seven miles west of Morgan City. Prior to entering the Town of Berwick he had been traveling at a speed of approximately 60 miles per hour but upon reaching the corporation limits reduced his speed to approximately 35 miles per hour. He was quite familiar with the intersection in question and before reaching the junction he looked but observed no vehicles approaching from either direction on Fifth Street. As he reached the intersection he looked to his right to again observe for approaching traffic and before he was aware of its presence, plaintiff’s car loomed directly in •his path approximately 25 feet distant. According to Guzzino, when he first observed the Pontiac it had not quite completed its turn, the left rear thereof being slightly to the left of the center -of the highway. Guzzino immediately applied his brakes and attempted to turn to the left and instantly the collision occurred.
Following the accident both vehicles traveled a distance of approximately 157 feet, the Pontiac turning around full circle and coming to rest on the south shoulder *672 of Highway 90 facing in an easterly direction while the Guzzino vehicle stopped on the north side of the highway also facing the east.
Investigation of the scene by a state trooper summoned thereto, disclosed that the point of impact was virtually in the center of the highway at a point ten feet east of the east parallel line of Fifth Street. The damage to the Guzzino vehicle was confined to the right front side thereof, the hood, grill, bumper and fender being damaged on that side — the left front headlights remained undamaged. The Angeron vehicle was damaged quite extensively in that the entire rear end of the automobile was caved in — particularly in the vicinity of the right rear fender. The trunk and a bodily extension known as a “Continental Kit” were collapsed and demolished and, in addition, the top and chassis were twisted.
Though numerous ramifications thereof appear in the brief of learned counsel for appellant in substance two contentions are advanced. Firstly, that Angeron had completed his turn and was struck from the rear while proceeding easterly in the right hand lane of travel on the highway and had, therefore, preempted the intersection and secondly, that had Guzzino been traveling at a lawful rate of speed and keeping a proper lookout he could or should have seen the Angeron vehicle and stopped in time to avoid the accident.
For all practical purposes only two factual issues are disputed, namely, the precise position of the Angeron vehicle at the moment of impact and the speed of the Guzzino car. Although the driver of the Angeron vehicle testified he had completed his turn, straightened out on the highway and was traveling entirely in the right eastbound lane when struck, we believe the learned trial court correctly found that Angeron had almost but not quite completed the turn and that the left rear of his vehicle was siightly in the left eastbound lane of the highway. In this connection the Guz-zino boy testified that when he first observed the Pontiac it was approximately 25 feet away with its left rear slightly to the left of the center of the highway. Guzzino immediately applied his brakes and attempted to turn left but could not avoid the collision. In this regard Guzzino is corroborated to some extent by the testimony of the state trooper who fixed the point of impact in the center of the highway by certain “gouge marks” noted in the surface of the roadway. In addition, two occupants of the Angeron vehicle, Martha Rathbun and Linda Alfred testified they were not sure whether their host driver had completed his turn when the accident occurred. We believe the evidence preponderates in favor of the conclusion that at the moment of impact Angeron had not quite completed his turn and that the left rear of his vehicle was still slightly over the center line of the highway. This conclusion is borne out not only by the testimony of the witnesses mentioned but also by photographs of the two vehicles showing that the damage to the Ford was confined entirely to the right front side and while the entire rear of the Pontiac-was damaged it appears that the main force of the impact was to the right of center with the blow glancing to the left.
We believe the trial court incorrectly concluded Guzzino to be free of negligence constituting a proximate cause of the collision but notwithstanding the negligence of Guzzino plaintiff may not recover herein because of the palpable contributory negligence of Angeron. We believe the physical evidence consisting of the nature and extent of damage to the two vehicles and the distances the automobiles traveled following the impact clearly indicate Guzzino was traveling in excess of 35 miles per hour as he contended but not as much as 60 miles or more per hour as argued by plaintiff. Furthermore, Guz-zino’s failure to note the presence of the Angeron vehicle which was plainly in sight also constituted negligence.
*673 Plaintiff’s argument that the Angeron vehicle enjoyed the right of way because the traffic light was exhibiting a yellow or caution signal to traffic proceeding southerly along Fifth Street and displaying a red or stop signal to vehicles on the highway and, therefore, gave the driver of plaintiff’s vehicle the right of way, is clearly without merit under the facts and circumstances shown herein. In this regard the evidence shows that during daylight hours the light in question is operated as an ordinary automatic signal showing alternately green, yellow and red signals. At night, however, it is adjusted to flash on and off showing a red or stop signal for north-south traffic on Fifth Street and a yelllow or caution blinking light for vehicles on Highway 90. It is conceded that Highway 90 is the superior highway. The record further shows that if the light was showing a caution signal to drivers on Fifth Street and a stop signal to those on the highway as plaintiff contends, it was in fact malfunctioning at the time. Be this as it may, however, it can be of little comfort to plaintiff. The record shows that Angeron was fully aware that Plighway 90 was the superior thoroughfare and that, knowing this, he stopped before beginning his turn. It further appears that stop signs were in place on Fifth Street as a warning to motorists to stop before entering or crossing Highway 90. The undisputed fact is that Angeron did stop knowing full well that he was legally required to do so.
The intersection in question is in the heart of the Town of Berwick with service stations situated on all four corners of the junction. To the west of its intersection with Fifth Street, Highway 90 makes a long sweeping curve to the right. A surveyor, called as a witness on behalf of defendant testified that by actual straight line measurement a person standing on the north edge of the paved portion of Highway 90 at the intersection could see a distance of 700 feet to the west. Since he made his measurement along the chord of the arc formed by the curve in the highway, he pointed out that the actual distance a vehicle would have to travel upon the highway would be slightly greater than the 700 feet maximum distance from which it could be seen. The surveyor conceded that the view to the west of a motorist on Fifth Street would be .reduced in proportion to the distance he may have stopped north of the north edge of the paved portion of Highway 90.
Plaintiff advanced the contention that the reason his son did not see the approaching Ford is that the latter vehicle was traveling at an extremely excessive rate of speed and was not yet in sight when the driver of plaintiff’s vehicle stopped at the traffic light. This contention is without proof in the record. None of the occupants of plaintiff’s vehicle who were able to recall the incident, were aware of the approaching Guzzino automobile. They neither saw the lights nor heard the approach of the Guzzino car until a split second prior to the accident. They heard the squealing of brakes and instantly the collision oc-cured. Although the driver of the Guzzino vehicle testified he reduced his speed to approximately 35 miles per hour and was corroborated therein by the testimony of an acquaintance, Calvin Trahan, who was walking out of a nearby bar and observed Guzzino drive by at a moderate rate of speed, we are convinced Guzzino was traveling at a speed in excess of 35 miles per hour. We do not find, however, that as testified by plaintiff’s witness, Abel Si-moneaux, operator of a service station located at the intersection, that Guzzino was traveling at a speed in excess of 60 miles per hour.
When called upon direct examination Mr. Simoneaux stated that at the time the accident occurred, he was seated in the service station reading a book and although he was not paying “particular attention” he heard the approach of the Guzzino vehicle and concluded that whereas he could not judge its speed, he believed it to be coming “pretty fast”. Repeatedly counsel for ap *674 pellant pressed Mr. Simoneaux for an estimate of the speed of the Guzzino vehicle and he consistently refused to answer saying he could not tell. However, finally, Mr. Simoneaux did state that if he had to give a figure he would judge it to be at least 60 miles per hour. He further stated that from where he was sitting he could look out the window of the station and see the highway.
Upon cross examination, however, Mr. Simoneaux was confronted with a written statement given to counsel for defendant October 24, 1959, wherein the witness related that while he saw the lights of the car on the highway and heard its approach he could not estimate its speed and could not tell whether it was coming "fast” or “slow”. It further developed on cross examination that Mr. Simoneaux had given yet another written statement on June 3, 1960, wherein he stated that he was seated in the station and heard a collision but could not see the highway because the window was covered with political posters which blocked his view. In addition, this latter statement related that “the only and first thing I saw of the accident was after the collision took place”. In view of the obvious hesitancy of the witness to estimate the speed of defendant’s vehicle and the prior contradictory statements given regarding his version of the accident, this court finds that the trial court properly accorded little weight to his testimony.
The preponderance of the evidence supports defendant’s contention that the Ford automobile was in position to be seen by the Angeron lad when he stopped at the intersection before commencing his turn. We find no merit in the argument of plaintiff that when the Pontiac stopped at the light the Ford was so far distant that its lights could not be seen and that because of its exceptionally high rate of speed it arrived at the intersection while the slow moving vehicle of plaintiff was traveling a distance of approximately 80 feet from the point where it stopped to the place where it was struck. Nor do we find any merit in the contention that Angeron’s vision to the west was limited because he stopped some distance north of the light and, therefore, because of the curve visibility to his right was substantially reduced. In this regard the evidence shows that Angeron stopped near the north edge of the paved surface of Highway 90 and that visibility to his right was unimpaired. Allowing for such reduction in visibility as resulted from his position, it is clear that he could and should have seen the lights of defendant’s automobile while it was yet a considerable distance away. Because it was in fact night time and the curve was a rather gentle one there appears no reason why David Angeron should not have noted the lights of the oncoming Ford. For the Ford to have been out of sight around the curve when An-geron stopped, it would have necessarily had to be traveling considerably in excess of 60 miles per hour to reach the point of impact while the Pontiac simultaneously negotiated the distance it traveled from the place where it stopped to the point where it was struck. The record contains no evidence which would support such a conclusion. We have no hesitancy in concluding that when Ang-eron commenced his turn the Guzzino vehicle was so near as to make his intended left turn dangerous. It is unnecessary to determine why the Angeron youth did not see the Ford. Perhaps he was distracted by the radio which the record shows was playing at the time or perhaps by the presence of his three acquaintances who were seated to his right although we concede the testimony of Angeron shows that his guests did not impede his view to the right.
 Plaintiff’s son was clearly under a duty to stop knowing that he was on the inferior highway and also because of the presence of the stop signs which commanded him to yield the right of way. The obligation of stopping includes the duty of ascertaining that the intended left turn could be negotiated safely. White v. Glass, La.App., 78 So.2d 57; Porter, for and on Behalf of Porter v. DeBoisblanc, La.App., *675 64 So.2d 864; Buras v. Peck, La.App., 83 So.2d 783; Carlson v. Fidelity Mutual Ins. Co., La.App., 88 So.2d 461; Gerrets v. Reed, La.App., 99 So.2d 408. Angeron did not fulfill his continuing duty to exercise care and caution and failed to yield the right of way to the approaching Ford which he should have seen. Had he seen the Ford unquestionably he would have realized it was so close as to make his entry onto the highway extremely dangerous.
The doctrine of preemption of an intersection also relied upon by plaintiff herein is without application under the facts and circumstances of this case. To preempt an intersection the driver on the inferior street or highway must enter therein at such time that he may cross or turn in safety and without interfering with or impeding traffic proceeding lawfully upon the superior thoroughfare. Andrea v. Hicks, La.App., 125 So.2d 251; Dennison v. Southwestern Fire and Casualty Company, La.App., 124 So.2d 421. To dash into an intersection a few feet or a split second ahead of traffic on the superior street or highway does not in legal contemplation constitute preemption of an intersection thereby giving the motorist on the inferior roadway the right to proceed and imposing upon the driver on the superior highway the duty to yield the right of way. Lavigne v. Southern Farm Bureau Cas. Ins. Co., La.App., 125 So.2d 430. Angeron’s driving upon the highway without seeing the Guz-zino vehicle is tantamount to his not looking before entering the intersection for, in the eyes of the law, to look and not see is the equivalent of not looking at all. It is well settled in our jurisprudence that whatever the operator of a motor vehicle can see, or should see, by the exercise of reasonable observation and precaution, he is charged with having seen, and his failure to see what he could or should have seen, by the exercise of due diligence, does not absolve him from negligence. Theriot v. Marquette Casualty Co., La.App., 111 So.2d 799; Howard v. Great American Indemnity Company, La.App., 106 So.2d 539; Pardue v. Norred, La.App., 95 So.2d 363; Martin v. Adams, La.App., 88 So.2d 476.
Nor can we agree with illustrious counsel for appellant that the instant case is one in which the doctrine of last clear chance should be invoked to permit recovery by plaintiff herein. For the principle of last clear chance to be applicable the preponderance of evidence must affirmatively establish to a reasonably certainty that defendant could or, by the exercise of ordinary and reasonable care, should have discovered the peril of plaintiff in time to have avoided the accident and the consequent injury or damage. It is not shown with any degree of certainty whatsoever the distance the Guzzino Ford was from the intersection at the moment the Angeron Pontiac began its left turn. Neither driver was aware of the presence of the other until the accident was not only imminent but also absolutely unavoidable. Had Guzzino been keeping a proper lookout and had he observed the Pontiac stopped for the light, he would have been entitled to presume that it would remain in its position of safety, yield the right of way to which he, Guzzino, was entitled, and permit him to pass through the intersection without incident. From the evidence in the case at bar we can only speculate that had Guzzino been keeping a proper lookout he may have seen the Pontiac in motion in sufficient time to have either brought his vehicle to a halt or perhaps taken other evasive action such as driving to either the right or left. Such conclusion, however, is not made to appear in the present case to that reasonable certainty which the law requires as the foundation for application of the doctrine of last clear chance.
The doctrine of last clear chance, which presupposes the negligence of plaintiff is not to be applied to permit recovery by a negligent plaintiff except in those instances wherein the evidence reflects to a reasonable degree of reliability that defendant could or should have, by the exercise of ordinary and reasonable care, discovered *676 plaintiff’s peril in time to have avoided the accident. McCarthy v. Blair, La.App., 122 So.2d 837; Nugent v. Milburn, La.App., 47 So.2d 377; Morris v. Weaver, La.App., 81 So.2d 19.
The following language appearing in the fairly recent Supreme Court decision in Bergeron v. Department of Highways, 221 La. 595, 60 So.2d 4, is deemed particularly apropos' the issue of last clear chance:
“It involves as we have said various calculations of the rate of speed, of the time it takes to react to an emergency and the application of brakes as well as the distance in which a truck, like the one in this case, can be brought to a stop, travelling at a given speed. As a result of those calculations, especially those of the rate of speed of the respective vehicles which are based principally on assumptions, the difference is one of seconds in the matter of time, and of a few feet only in the matter of distance; too little in our opinion to justify the application of the doctrine of last clear chance and discovered peril. ‘The doctrine of the last clear chance is one involving nice distinctions, often of a technical nature, and courts should be wary in extending its application.’ Hutcheson v. Misenheimer [Co.], 169 Va. 511, 194 S.E. 665, 667.”
In the case at bar the driver of plaintiff’s vehicle was patently guilty of gross negligence and while the record also reflects negligence on the part of the driver of the Guzzino automobile, it is not shown with any degree of certainty that the latter could have avoided the accident.
For the foregoing reasons the judgment of the trial court rejecting plaintiff’s demands is affirmed.
Affirmed.
PER CURIAM.
In application for rehearing learned counsel for appellant correctly points out that in the opinion rendered herein we erroneously stated the speed limit in the town of Berwick to be thirty-five miles per hour whereas the record shows such speed limit to be twenty-five miles per hour.
We found in our original opinion that the driver of plaintiff’s vehicle was guilty of contributory negligence; consequently the negligence of the driver of the Guzzino vehicle, if any, in exceeding the speed limit shown, is of no consequence.
Rehearing denied.