REID, Judge.
This is a suit by Joseph A. Blanchard, Jr., to recover damages for injuries sustained as a result of an automobile accident which occurred on December 12, 1960, on Plank Road in Baton Rouge, Louisiana. The defendants named in the plaintiff’s petition were Earnest H. Soileau and his automobile insurer, Hardware Mutual Casualty Company. Earnest H. Soileau was never served and filed no pleadings. From a judgment in favor of the plaintiff against Hardware Mutual Casualty Company alone in the sum of $2000.00 the insurance company has appealed. The appeal has been answered by the plaintiff praying for an increase in the amount awarded by the Trial Court to $15,000.00 for personal injuries, and $2023.-59 for special damages and expenses, plus legal interest from date of judicial demand until paid.
In the alternative plaintiff prays the judgment of the Trial Court provide for legal interest from date of judicial demand until paid on said award. A copy of the insurance policy issued to Mr. Soileau by the defendant company is filed in this record and shows that the applicable limits of liability for any one person is $5000.00.
The judgment signed in the Trial Court does not provide for the payment of legal interest from judicial demand.
The facts surrounding the accident out of which this suit arises are as follows: Plaintiff and defendant were both proceeding in a northerly direction on Plank Road, a four lane thoroughfare in the City of Baton Rouge, just south of the intersection of Monroe Street and Plank Road. Defendant’s insured was driving his automobile in the right hand lane of the two north bound lanes of Plank Road and the plaintiff was proceeding in the left hand lane of said road. Soileau passed Blanchard some three or four blocks before the occurrence of the accident, the Soileau vehicle passing in the right hand lane of Plank Road. There was some traffic preceding north in the right hand lane of this street and this traffic began to slow down for a red light a few blocks from the point of impact. At this time the Soileau vehicle attempted to negotiate a change of lanes from the right hand lane to the left hand lane and the Blanchard vehicle had overtaken the car driven by Soileau after the traffic in the right hand lane began slowing down for the light. Soileau gave no signal or warning preparatory to making his entry into the left hand lane. As a result of the maneuver the defendant’s automobile struck plaintiff’s vehicle.
When a motorist who is traveling in a multiple lane highway changes from one lane to another the burden is upon the motorist to ascertain that such a change can be made safely and without interference with overtaking traffic. Fendlason v. Allstate Insurance Company, (La.App. 1st Civ. 1961), 136 So.2d 814, and the authorities therein cited. The defendant contends Mr. Soileau looked for overtaking traffic but he was unable to see the Blanchard vehicle as it was in a “blind spot.” Nothing prevented Mr. Soileau from turning his head to the left so that in conjunction with his use of his rear view mirror he could have eliminated the so called “blind spot”. A motorist who fails to see what he should or could have seen by the exercise of due diligence is charged under our law with seeing. Angeron v. Guzzino (La.App. 1st Cir.1962) 140 So.2d 669; Theriot v. Marquette Casualty Company, (La.App.) 111 So.2d 799; Howard v. Great American Indemnity Company, (La.App.) 106 So.2d 539; Pardue v. Norred, (La.App.) 95 So.2d 363.
The defendant contends Blanchard was contributorially negligent in passing at an intersection when such action is prohibited by LSA-R.S. 32:233(E) and Section 11:-228 of the Baton Rouge City Code.
 Our Courts have held that certain provisions of LSA-R.S. 32:233 do not apply to multiple lane highways. Marrero v. *519 Richard (La.App. 1st Cir.1957) 98 So.2d 305; Mooney v. American Automobile Insurance Company (La.App. 1st. Cir.1955) 81 So.2d 625. However, we are not called upon herein to pass upon the applicability of these statutes as the defendant has asserted contributory negligence as a bar to recovery and alleged that said negligence consisted of the “plaintiff’s failure to keep a proper look out, failure to keep his automobile under proper control, operating his vehicle too fast for conditions as they existed at that time, failure to avoid a collision.” Because the defendant did not charge in his answer that plaintiff attempted to pass the defendant’s insured at an intersection this issue comes under a doctrine expressed in Service Fire Insurance Company of New York v. Indiana Lumber MI Company, (La.App. 1959) 111 So.2d 358 and the authorities therein cited. This case held that the Court is without authority to consider contributory negligence under LSA-R.S. 32:233, subdivision E unless it is especially asserted in the answer that the contributory negligence of the plaintiff consisted of an attempt to pass at an intersection in violation of this statute. See also Howard v. Great American Indemnity Company, (La.App.) 36 So.2d 881.
The plaintiff predicates his claim for damages upon a ruptured intervertebral disc at the L4 — L5 interspace compressing on the nerve root which he alleges he sustained as a result of this accident. The plaintiff admits that he had been involved in two previous accidents during the year 1960 (February 3 and February 17) and that his back was injured in those accidents. In fact, at the time of this accident the plaintiff was scheduled for surgery to repair a suspected ruptured disc in the lumbro sacral junction. L5-S1). The plaintiff claims that his back pain became much more severe immediately following the accident and as a result thereof the surgery that had been previously scheduled for December 23, 1960 was performed December 16, 1960. When this operation was performed the surgeon discovered two ruptured discs. Dr. Duane Forman, a neurosurgeon, testified the accident sued upon probably caused the ruptured disc at TLA — L5. Dr. Forman based his opinion upon an examination that he had made upon the plaintiff just prior to the accident herein sued upon. This examination was made at the request of Dr. Stander, the plaintiff’s regular doctor, for the purpose of pinpointing the damage caused by the previous accident in preparation for the scheduled surgery. His testimony is quite detailed and clear as to his reasons for stating that as of the date of his examination, December 8, 1960, the plaintiff had only one ruptured disc and that was the lumbro sacral junction. Dr. Alvin Stander, an orthopedic surgeon of Baton Rouge, the plaintiff’s doctor in connection with the injuries received in his earlier accident, was much more cautious in his testimony. The following is a cross-examination question propounded to Dr. Stander by defense counsel and his answer thereto:
“Q: By the time that you made your diagnosis of a ruptured intervertebral disc, the probabilities were that the man had two ruptured intervertebral discs, is that correct, in the light of your subsequent knowledge gained in the surgery ?
“A: At the time of my diagnosis I had made a tentative diagnosis of a ruptured intervertebral disc at the lumbro sacral junction on the left side, however, as I previously stated because of some of the overlapping sides, particularly the hypesthesia over the dorsem of the foot, we entertained the possibility of two ruptured intervertebral discs, but the tentative diagnosis pre-operatively was a ruptured lumbro sacral disc.”
It appears that the determinating factor of whether there was one or two ruptured discs at the time of the accident herein sued upon was the hypesthesia over the left foot. If this condition existed over the entire dorsem (top) of the left foot the probabilities are that the L4-L5 was rup *520 tured at the time of the accident. On the other hand, if this condition existed only over the lateral aspect of the left foot then it is more probable that the disc was ruptured in the accident herein sued upon. Careful review of the medical testimony shows that- the latter situation prevailed and therefore the probability is that the disc was in fact ruptured in the accident herein sued upon.
As has previously been stated the plaintiff was scheduled for surgery on his low back at the time of this accident. However, complications arose as a result of the injured disc which we have ascertained was caused in the accident herein sued upon and the plaintiff was required to re-enter the hospital and submit to another operation February 17, 1961. After his discharge from the hospital the plaintiff was required to wear a lumbo sacral brace and at the time of the trial, April 27, 1962 he had not been discharged by his doctor, Dr. Stander.
Although this Court is convinced that the accident sued upon caused the ruptured disc, and we so hold, it must be remembered that there is no question whatever that the accident at least caused an aggravation of a pre-existing injury.
Under the circumstances and in view of the limits of the defendant’s policy of liability insurance, the judgment of the District Court is amended by increasing same from $2000.00 to $5000.00. See Gunther v. Lord (La.App. 3rd Cir.1961) 132 So. 2d 488 and the authorities therein cited.
£8] LSA-R.S. 13:4203 provides that legal interest shall attach from date of judicial demand on all judgments, sounding in damages, “ex delicto” that be rendered by any of the Courts. The plaintiff prayed for legal interest from date of judicial demand in his original petition. The omission of an award of such interest was undoubtedly an oversight and is hereby corrected by this Court. Caldwell v. City of Shreveport, 150 La. 465, 90 So. 763; Plauche v. Consolidated Companies, 1958, 235 La. 692, 105 So.2d 269.
It is therefore ordered that the judgment of the Lower Court be amended by increasing the amount from $2000.00 to $5000.00 with legal interest from judicial demand until paid and all costs and as thus amended the judgment of the Trial Court be affirmed.
Amended and affirmed.