MILLER, Judge.
Mrs. Carrie White Fontenot seeks damages for personal injuries, and Rallen Fon-tenot, her husband, claims special damages in connection with his wife’s accident and medical treatment, against Liberty Mutual Insurance Company as liability insurer of the vehicle driven by Glenn Jory.
The accident occurred at about 6:30 a. m. on August 31, 1967 just north of Crowley near the intersection of Louisiana Highway 13 and Interstate 10. At that point, La. 13 is a four lane highway with two southbound lanes separated from two northbound lanes by a slightly elevated median. Both vehicles were proceeding south at about 35 to 40 miles per hour, with Mrs. Fontenot in the inside or left lane and Mr. Jory in the right lane. When Jory eased into the left lane for the purpose of making his left turn to enter the 1-10 ramp to go to Lafayette, the left rear bumper of his vehicle struck the right front fender of the Fontenot vehicle, causing only slight damage. In an effort to avoid the Jory vehicle, Fontenot turned left and drove up on the median. Both parties stopped and on finding that neither seemed to be injured, decided not to report the accident to the police. Mr. Jory told Mrs. Fontenot to have the damage repaired and send the bill to him.
The trial judge held that Jory was negligent, but rendered judgment in favor of defendant, Liberty Mutual, finding that Mrs. Fontenot was contributorily negligent. Plaintiff appealed.
The contested issues on appeal are (1) the finding that Mrs. Fontenot was guilty of contributory negligence which was a proximate cause of the accident, and (2) in the event this finding was erroneous, the extent of damages suffered by plaintiffs.
Jory did not make a sudden turn into the left lane, but rather eased over into the left lane. Before starting this maneuver, he looked in his rear view mirror but failed to see any overtaking traffic. He surmised that Fontenot must have been in his “blind spot.” He testified that when he was only a foot or two into the left lane, he felt a slight bump, and immediately pulled back to his right. His negligence is not subject to question. Blanchard v. Hardware Mutual Casualty Company, 153 So.2d 517 (La.App. 1st Cir. 1963).
The trial court’s finding of contributory negligence was explained in the oral opinion handed down at the conclusion of the trial, as follows:
“Plaintiff testified that she was driving her car on the inside, or the left hand lane of the highway in question, and, by her admissions, she said she did not see the defendant’s automobile until just as it turned into her vehicle causing the accident. While this court is well aware of the rule of law that says a vehicle making a left turn is imposed with a great degree of care, at the same time the burden of responsibility of care is not completely removed from the driver of the
*329 following, or the overtaking vehicle who happens to be in the other lane of traffic.”
While there is a great deal of testimony to substantiate the conclusion that Fontenot did not see Jory’s vehicle until “just as it turned into her vehicle”, there is testimony by Mrs. Fontenot to the contrary. Mrs. Fontenot and Mr. Jory had known each other for many years. She testified in answer to the question “When is the first time that you saw Mr. Jory’s car?”, “That I can remember, is when he started to hit me.”
“Q. You didn’t see him before, just as he was about to hit you, is that correct ?
“A. As for him, just as he — I realized that he was going to turn into me, and I recognized Mr. Jory. I tried to get out of his way and I didn’t.”
* * * * * *
“Q. You didn’t see him?
“A. I can’t remember seeing him, except at the time I recognized him when he started to turn in front of me. I realized that was Mr. Jory.”
Plaintiff explains this testimony by stating that Mrs. Fontenot was not then referring to the first time she saw the Jory vehicle, but rather was referring to the time when she first recognized Mr. Jory.
At other times she testified that she had noticed the car in front of her before it began to enter her lane of traffic. Tr. 158, 195, 202, and 254.
When Jory eased into the left lane, Fon-tenot was in a position where she could not avoid the accident. As Jory stated, she was in his blind spot. She did everything she could do by turning up on the neutral ground median. It is certain that she was looking at Jory’s automobile closely enough to recognize the driver at the time he began his turn. At no other point was lookout or lack of it, pertinent to this case. Fontenot was looking when she should have been looking and was still unable to avoid Jory who was oblivious to her presence.
A motorist has the duty to keep a lookout to see dangerous situations as soon as they become visible and to avoid perceived dangers if he can, but he is not held to anticipate improper turns by other motorists. See Bankston v. Baton Rouge Bus Co., 58 So.2d 232 at 235, 6 (La.App. 1st Cir. 1952); Vigilant Insurance Co. v. Lumbermen’s Mutual Cas. Co., 85 So.2d 87 (La.App. 1st Cir. 1955); Rottman v. Beverly, 183 La. 947, 165 So. 153 (1935). See also Blashfield, Automobile Law and Practice (2d ed) § 112.7, pp. 625-626; Kennedy v. Frierson, 142 So.2d 838. (La.App. 2nd Cir. 1962).
It is well established that under the “emergency doctrine” when one is confronted with a sudden peril requiring instinctive action, he is not, in determining his course of action, held to the exercise of the same degree of care as when he has time for reflection * * Blashfield, Automobile Law and Practice (2d ed.) § 102.26, p. 194; Jackson v. Indiana Lumbermen’s Mutual Insurance Co., 175 So.2d 349 (La.App. 2nd Cir. 1965).
QUANTUM
Mrs. Fontenot’s claims are based on two conditions which she seeks to relate to the accident. First, she sustained a cervical strain of moderate severity. Secondly, on February 29, 1968, she was diagnosed as having a carpal tunnel syndrome, a condition which brings about numbness to the inside of the hand and fingers as a result of constriction of the “tunnel” in the wrist, through which nerves pass to the hand.
After the accident, Mrs. Fontenot proceeded to her work as a registered nurse employed by the American Legion Hospital in Crowley. Some two hours later, she developed a severe headache, dizziness, and vomiting, with severe pain in her neck. Dr. Joe Holden, a general practitioner of Crowley, examined her, took x-rays (which were *330 negative), gave her pain medication, put a cervical collar on her and put her to bed in the hospital. Later that day, he permitted her to return to her home in Eunice. She returned to work at the Hospital about 10 days later and worked regularly until March of 1968. She wore a cervical collar for several weeks.
She gave up her work at the Hospital because she didn’t have any strength in her right hand, and didn’t want to impose on the other nurses by having them do her work. She then worked for a Nursing Home at the same salary, for a period of four or five weeks, to cover for a friend who had to take maternity leave. Since that time, Mrs. Fontenot has done some part time private duty as a Registered Nurse.
Dr. Holden was the treating physician. He had treated her earlier for a back injury, a thyroid condition and for some heart trouble. Some fourteen years before, plaintiff had a laminectomy at the level of her low back. She had also had two thyroid operations, and four other surgical procedures. During the course of treatment, he referred her to Mr. Walter Schmid, Jr., Registered Physical Therapist, to Dr. Luke Bordelon, orthopedic surgeon of Opelousas for examination concerning her cervical complaints, and thereafter to Dr. John Jackson, a neurosurgeon of New Orleans, because of the numbness in her hand.
Dr. Holden testified that all objective findings relative to the neck or cervical area disappeared by early December of 1967. Since that time however, she has continued to have subjective complaints, and as late as November, 1968, he was still treating these objective complaints. But there has been no change in her 'objective findings relative to the neck area. Dr. Holden testified that he thought “all along that her neck symptoms would gradually subside, which they have done. I did not expect any permanent disability from her neck injury.” (Tr. 226.)
Dr. Bordelon saw plaintiff one time and then on November 10, 1967, slightly more than two months post accident. He found no muscle spasm. He did find tenderness at the C-5 to C-6 level, and X-rays showed a slight narrowing at the C-4 and C-5 level. This was attributed to disc degeneration, but not related to the accident. He was of the opinion that there was no nerve root involvement; that she had sustained a moderately severe cervical strain and that she would completely recover in about six months.
Dr. Bordelon related that Mrs. Fontenot made no complaint associated with either hand; that he specifically tested (as he routinely does) all the upper extremities for sensation, and found no deficit in the arms, fingers, or hands. This testing was done with cotton and pin prick.
Dr. John A. Jackson examined plaintiff on two occasions. First on February 29, 1968 and second in June of 1968. On both occasions, Dr. Jackson was mainly concerned with plaintiff’s complaint of numbness in the right hand. However, on examining the cervical region he found no muscle spasm, no evidence of nerve root injury, and a full range of motion in the cervical spine. He also found the narrowing of the disc space between C-4 and C-5, but stated that he could not attribute anything to it. (Tr. 42.)
Dr. Eugene Fields, a general surgeon of Crowley, examined plaintiff on two occasions in April of 1968. Both examinations were primarily to determine whether or not surgery should be undertaken to relieve plaintiff’s complaints relating to her right hand. Nevertheless he examined the cervical spine and found a full range of motion. There was no muscle spasm. In short there was no objective finding with reference to the neck. He recommended against surgery based primarily on the finding that there was no atrophy of muscles in her hand.
The only physician to examine Mrs. Fontenot on behalf of defendant, was Dr. Richard W. Levy, neurosurgeon of New Orleans. He examined her on October 23, *331 1968. She complained of tenderness over the right side of the front of. the neck, but there was no muscle wasting. He found the slight narrowing in the interspace between C-4 and C-5, but concluded, as did all the others, that there was no nerve root involvement.
Mr. Walter Schmid, Jr. administered physical therapy to Mrs. Fontenot at the request of Dr. Holden and with the assent of Dr. Bordelon, Dr. Jackson and Dr. Fields. It is not clear in the record that these physicians knew that plaintiff was receiving from three to six treatments every week, but they agreed that physical therapy was helpful. Treatment was started September 9, 1967 with moist heat, ultra-sound and massage. This regime was followed with cervical and shoulder exercises and cervical traction. Later, Mr. Schmid was not sure as to when, he administered exercises in order to alleviate the difficulties with the right hand.
According to Mr. Schmid, Mrs. Fontenot suffered pain so great that initially he could not begin cervical traction and he had to keep exercises to a minimum. While her condition has improved, he stated that she was still having pain and difficulty as of the date he testified — September 23, 1968. This included neck pain and pain in the hand. Mrs. Fontenot was treated more than 240 times and the therapist’s bill totaled $1,456.00. All of the other medical, including drugs, totaled only $310.04.
Plaintiff has failed to carry the burden of establishing the second phase of her claim — the carpal tunnel syndrome — is related to this accident. Her first complaint relating to this problem was made to her treating physician, Dr. Holden on December 2, 1967. She was first examined and diagnosed with regard to this complaint on February 29, 1968, six months post accident. All of the Doctors list obesity and thyroid deficiency as two of the principal causes of this problem. Mrs. Fontenot’s obesity was a distinct problem and she was asked to lose 100 pounds by Dr. Jackson at his February examination. When she returned for her June, 1968 examination, she had not lost any weight.
If plaintiff suffered some swelling in her right wrist as a result of the accident, and if this was the cause of her hand complaints, the numbness in the right hand would be expected to develop sooner than December 2, 1968. The specific findings of no loss of sensation as of November 10, 1967, by Dr. Bordelon is not overcome by the opinion evidence that this complaint may be related to the accident.
Furthermore, it is noted that none of the physicians were of the opinion that Mrs. Fontenot’s complaints would prevent her from working. They each noted that there was no atrophy of the muscles, and all agreed that atrophy would shortly follow if the condition was serious.
For Mrs. Fontenot’s pain, suffering and disability relating to the moderately severe cervical strain, objective symptoms of which disappeared three months post injury, but subjective symptoms having continued through trial more than 15 months post injury, she is awarded the sum of $3,500.
For special damages, Mr. Fontenot is awarded $60.00 for damages to the community owned automobile, medical expenses of $1,038.04 (one-half of the physical therapy treatments are disallowed on the basis that they were related to the hand complaint which was not related to this accident); and loss of his wife’s earnings for a period of 10 days, which amounted to $393.75.
The judgment of the trial court is reversed and judgment is rendered in favor of plaintiff, Mrs. Carrie White Fontenot, and against defendant, Liberty Mutual Insurance Company, in the full sum of $3,500.-00 with legal interest thereon from judicial demand; and in favor of plaintiff, Rallen' Fontenot and against defendant, *332 Liberty Mutual Insurance Company, in the amount of $1,491.79 with legal interest thereon from judicial demand. All costs of court in both the trial court and this court are taxed to defendant.
Reversed and rendered.