BLANCHE, Judge.
Plaintiffs, Webster J. Sevin, individually and on behalf of his minor son, Rory Sev-in, and Lena L. Sevin, filed this suit to recover damages resulting from an automobile accident which occurred on February 23, 1969, on Louisiana Highway 55 near the junction of a small farm-to-market road known as the Hope Farm Road. Plaintiff, Webster J. Sevin, was driving his 1965 Buick in a northerly direction on said highway from Montegut toward Hou-ma, Louisiana. His wife, Lena L. Sevin, and his minor son, Rory Sevin, were passengers in the automobile. Approximately four miles north of Montegut, Louisiana, plaintiff driver overtook and attempted to pass a slower-moving 1964 Chevrolet owned by Diamond M Drilling Company and operated by Diamond M employee, Kemo Toloudis. While this passing maneuver was taking place, the Diamond M vehicle pulled out and also attempted to pass another vehicle ahead of it, resulting in a collision between the Seviñ and Diamond M vehicles. In the collision the left rear bumper of the Diamond M vehicle became hooked to the right front fender of the plaintiffs’ vehicle, causing the Diamond M vehicle to drag plaintiffs’ car along with it and off the highway onto the shoulder where the vehicles finally became separated. Plaintiffs’ car was then thrown off the shoulder striking an embankment and injuring all three occupants.
Plaintiffs filed suit against Kemo To-loudis, Diamond M Drilling Company and its liability insurer, Argonaut-Southwest Insurance Company. Defendants answered and filed a third party demand against Firemen’s Insurance Company of Newark, New Jersey, alleging alternatively that in the event Kemo Toloudis was found guilty of negligence, then Webster J. Sevin, Lena L. Sevin and Rory Sevin were guilty of contributory negligence and asking for contribution.
After trial, judgment was rendered in favor of plaintiff, Webster J. Sevin, for *377 $1,317.05; in favor of plaintiff, Webster J. Sevin, as administrator of the estate of his minor son, Rory Sevin, for $45.00; and in favor of plaintiff, Lena L. Sevin, for $8,562.98, against all three defendants. In an amended judgment the demands of third party plaintiffs were dismissed and judgment was rendered for third party defendant, Firemen’s Insurance Company of Newark, New Jersey.
Defendants (and third party plaintiffs) have suspensively appealed, and appellees have answered the appeal seeking an increase in the award to plaintiff, Lena L. Sevin.
Appellants contend the trial court erred (1) in finding that the junction of the Hope Farm Road with Louisiana Highway 55 was not an intersection, (2) in finding that Kemo Toloudis was guilty of negligence proximately causing the accident, (3) in finding that Webster Sevin was not guilty of negligence which proximately caused the accident, and (4) in awarding to Lena L. Sevin, or to any plaintiff, lost wages in the amount of $562.98.
The trial court in a well-written opinion made the following factual findings which establish the cause in fact of the accident and disposes of appellants’ second specification of error:
“ * * * On February 23rd, 1969, a Sunday,'at about 3:00 P.M., Mr. Webster J. Sevin, accompanied by his wife, Lena L. Sevin and their minor son, Rory were traveling in a Northerly direction along highway 55, generally known as the Bourg-Montegut highway. The defendant, Kemo Toloudis, alone and driving his employer’s vehicle was traveling in the same direction as the Sevin automobile and just ahead of the Sevin automobile.
“The testimony is quite clear that ahead of the car driven by Kemo To-loudis was another automobile. So prior to the accident and in a long curve were the three automobiles following each other. There is no question that each was traveling at or below the posted speed limits. Throughout the curve there was painted on Highway yellow markings indicating to traffic that northbound vehicles were prohibited from making passing maneuvers.
“The uncontradicted testimony is to the effect that upon having negotiated the long curve and having passed beyond the yellow line on Highway 55, Mr. Sev-in turned into the left lane of traffic, blew his horn,[1] accelerated his automobile to pass the vehicle driven by Kemo Toloudis and had arrived at a point where the front of his automobile was even with the front door of the Toloudis automobile when Toloudis began a left turning maneuver that brought his automobile into the lane of traffic being travelled in by the Sevin automobile. The Toloudis automobile struck the Sev-in automobile although Mr. Sevin took evasive action by pulling to his left and slowing down. The Toloudis automobile accelerated and as it did, its rear bumper caught the right front part of the Webster Sevin automobile hooking it such *378 that the Toloudis vehicle was pulling the Sevin automobile.
“As a direct result of the hooking of the Sevin automobile with the rear bumper of the Toloudis automobile, the Sevin automobile was forced to drive upon the narrow shoulder of the highway and then onto an area between Bayou Terrebonne and the highway and there struck a hill or embankment causing injuries to Mrs. Sevin, Rory and Mr. Sevin. Rory and Mr. Sevin’s injuries were negligible.
“Mr. Toloudis admits that he had a side mirror on the automobile he was driving, however, he did not look at it prior to making his left turning maneuver. He admits looking into the rear view mirror inside the automobile and saw nothing behind him, although he did recall having seen an automobile to his rear shortly before.
******
“This Court concludes that the conduct of Kemo Toloudis in not exercising a proper lookout and making a left turn at a time when it was unsafe to make this maneuver is a proximate cause of the collision. Since it was stipulated that he was at all times pertinent to the matter acting in the course and scope of his employment, his negligence is imputed to his employer, Diamond M Drilling Company, whose insurer is Argonaut Insurance Company.” (Reasons for Judgment, Record, pp. 256, 257)
The factual situation thus presented is that of a motorist traveling in a line of traffic who suddenly and abruptly moved from the driving lane into the passing lane at a time when it was unsafe to do so because of the presence of an overtaking vehicle. In such a case we deem it to be negligence for a motorist traveling under such conditions to attempt to pass the motorist in front of him without first ascertaining that the maneuver can be made without endangering either oncoming or following traffic, the latter being the case here. A comparable situation is presented where the overtaken motorist attempts a left turn when it is unsafe to do so because of the presence of overtaking traffic. Jacobs v. State Farm Mutual Automobile Insurance Company, 191 So.2d 908 (La.App. 1st Cir. 1966). Also comparable is the situation of a motorist changing lanes on a multi-lane highway without regard to following traffic. Blanchard v. Hardware Mutual Casualty Company, 153 So.2d 517 (La.App. 1st Cir. 1963). The rule common to these cases seems to be that movements to the left across or into a traffic lane where normal passing is permitted should not be made without first ascertaining that such a maneuver can be executed safely and without danger to normal overtaking traffic. We, therefore, find that the trial court’s judgment in this regard is correct.
Defendants insist that plaintiff was not executing a normal passing maneuver inasmuch as he was passing in an intersection in violation of R.S. 32:76, subd. A(2) which prohibits passing when approaching within one hundred feet of an intersection. The accident occurred at or near a point where a farm-to-market road known as the Hope Farm Road forms a junction or “T” intersection with Highway 55 on the east. The trial judge declined to find that the junction was an intersection, and plaintiff assigns this finding as being manifestly erroneous. For the purpose of deciding the merits of this specification of error, we believe the question of whether plaintiff passed defendant while in an intersection is irrelevant, for this fact had nothing whatsoever to do with the cause of the accident. Again, we are in agreement with the trial judge’s disposition of this question and quote approvingly from his opinion as follows:
“Considering for the sake of argument that the Hope Farm Road was an intersection within the contemplation of the Highway Regulatory Statute, the Court does not feel that the plaintiff, *379 Webster Sevin was guilty of negligent conduct that was a cause in fact of the accident.
“In the matter, Beraud v. Allstate Insurance Company, 251 So.2d 402, First Circuit (1971), a similar factual situation to the instant case was tried. In the Beraud case, plaintiff had begun passing maneuvers that brought her into a no passing zone when a truck driven by the defendant began a left turn into her path of travel. The [appellate court] found the following:
‘ . . . Mrs. Beraud had commenced her passing maneuver and could have done so in perfect safety as the way was clear of oncoming traffic. Except for the defendant’s having negligently made a left turn in front of Mrs. Beraud at a time when he should have observed her in the act of passing him, there would have been no accident. In other words, the conduct of the plaintiff in violating the statute prohibiting passing was not a cause in fact of the accident .
‘Therefore, for the violation of a highway safety statute to result in a finding that the violation was actionable negligence or actionable contributory negligence, the conduct complained of must be a cause-in-fact of the accident and the purpose of the statute must proscribe the conduct causing the accident and injury.’
“The evidence in the instant suit shows that the highway where the accident occurred was straight (a curve behind scene of accident) and level, visibility was good and the left side of the highway was clearly visible and free of oncoming traffic. As to the Hope Farm Road, a stop sign existed to notice traffic on the gravel road to stop but as to traffic on Highway 55 there were no traffic control devices, lines or signs to prevent passing. The Court therefore concludes that Webster J. Sevin was not negligent in beginning his turning maneuver within 100 feet of the Hope Farm Road.” (Reasons for Judgment, Record, pp. 259, 260)
As referred to hereinabove, the Hope Farm Road dead-ends into Louisiana Highway 55 from the right or east. Defendant Toloudis was not coming out of the Hope Farm Road onto Louisiana 55, nor was he attempting to turn onto the Hope Farm Road, which would have been a turn to his right. His only purpose in pulling over to his left into the southbound lane was to pass the car ahead of him and in doing so he collided with plaintiffs’ car which was already in that lane attempting to pass him. We fail to see what the presence of the Hope Farm Road had to do with such a maneuver. As stated in Dixie Drive It Yourself System v. American Beverage Company, 242 La. 471, 137 So.2d 298, 304 (1962), the essence of the inquiry in such case is “whether the risk and harm encountered by the [defendant] fall within the scope of protection of the statute.” In our view the statute was enacted to protect a driver who may be coming out of an intersection onto the highway into the path of a vehicle which may be engaged in a passing maneuver or for the protection of a driver who may be attempting to make a left-hand turn from the highway onto the intersecting street. Since the intersecting roadway was on the right-hand side of the highway and the defendant Toloudis was attempting merely to pass around the left of another vehicle in front of him, there can be no causal relationship between the alleged violation of R.S. 32:76 and the accident.
The trial court awarded damages to the plaintiff, Lena L. Sevin, for loss of wages in the amount of $562.98 and clearly the award should have been made to the plaintiff, Webster J. Sevin, her husband, as head and master of the community. Mrs. Sevin was employed as a receptionist for Dr. J. B. Plauche and his wife, Dr. Anna Plauche. Mrs. Sevin testified that she did *380 not return to work until June, 1969, on a part-time basis and then in July on a full-time basis. Additionally, both of her employers testified that she missed at least three months of work. Mrs. Sevin testified that her net pay prior to the accident amounted to $187.76 per week. The award was for approximately three months’ pay and was proved with reasonable certainty. The foregoing considered, the judgment of the trial court will be amended to award the loss of wages to plaintiff husband, Webster J. Sevin, instead of to his wife, Lena Sevin.
Plaintiff answered the appeal alleging that the trial court erred in awarding plaintiff, Lena L. Sevin, $8,000 for her personal injuries and that said award should be increased. Mrs. Sevin sustained a compression fracture of the second lumbar vertebra. She was hospitalized for approximately three weeks and upon leaving the hospital was fitted with a steel brace which she wore for approximately five months. She was treated conservatively and went back to work on a part-time basis approximately three months after the accident. Dr. Stuart I. Phillips, an orthopedic surgeon, examined Mrs. Sevin on two separate occasions and testified that she would have between five and ten percent permanent partial disability of the lumbar spine. The award of the trial judge was not manifestly inadequate. As we have often stated, the trial court possesses great discretion in assessing awards of damages, LSA-C.C. Art. 1934(3); Lomenick v. Schoeffler, 250 La. 959, 200 So.2d 127 (1967); Ballard v. National Indemnity Company of Omaha, Nebraska, 246 La. 963, 169 So.2d 64 (1964); Gaspard v. LeMaire, 245 La. 239, 158 So.2d 149 (1963), and we are satisfied that the trial court did not abuse this discretion.
For the above and foregoing reasons, the judgment appealed from is affirmed in all respects except for the following: the judgment in favor of plaintiff, Webster J. Sevin, is increased by the sum of $562.98 and the judgment in favor of plaintiff, Lena L. Sevin, is decreased by the same amount. All costs are to be borne by defendants-appellants.
Amended and as amended affirmed.

. Defendants refer to this finding as manifestly erroneous because neither defendant Toloudis nor the driver of the vehicle in front of him heard plaintiff sound his horn in preparation to pass, though plaintiff driver, his wife and son all testified that plaintiff blew his horn. We view the matter as irrelevant, as R..S. 32:78(2) does not require the overtaking driver to sound his horn at all. The statute provides that the driver of an overtaken vehicle shall give way to the right in favor of an overtaking vehicle on audible signal and shall not increase the speed of his vehicle until completely passed by the overtaking vehicle. The defendant Toloudis was required to give to the right and not speed up, not because of any horn signal that may or may not have been given by plaintiff driver, but because plaintiff had long established the right of way over the defendant Toloudis, as the evidence shows he was in the passing lane long before Toloudis pulled to the left in front of him. (Footnote by appellate court)