415 So.2d 618 (1982)
Alfred J. DOUCET, et al., Plaintiffs-Appellees,
v.
RYDER TRUCK RENTAL, INC., Defendant-Appellant.
No. 8824.
Court of Appeal of Louisiana, Third Circuit.
May 26, 1982.
*619 Brame, Bergstedt & Brame, Frank M. Brame, Lake Charles, for defendant-appellant.
Nathan A. Cormie, Lake Charles, for plaintiffs-appellees.
Before DOMENGEAUX, CUTRER and SWIFT, JJ.
CUTRER, Judge.
This is an appeal from a jury verdict in favor of plaintiffs for damages sustained in a single vehicle accident which occurred as Brenda Doucet attempted to pass a truck.
The facts presented in this case are as follows:
On August 17, 1976, at 4:00 P.M., Brenda Gale Doucet was operating a pickup truck, proceeding east on Highway 10, a two-lane black-top highway, between Oakdale and Ville Platte. Riding with her was Francis Thompson.
While so proceeding, Brenda soon came upon an eighteen-wheel tractor-trailer driven by Ivan L. Gotreaux (Gotreaux), for defendant, Borden, Inc. The tractor-trailer had been leased from Ryder Truck Rental, Inc.
Brenda was traveling at approximately 50 miles per hour. She followed the tractor-trailer for about three minutes or about one or two miles. Brenda noticed that the truck had gone into the left (west) lane of the highway a few times as she approached it. As Brenda came up behind the truck, it was then proceeding straight within its lane. A car was traveling about two car lengths in front of the tractor-trailer.
At the point of the accident, the road was straight and visibility clear. The road surface was dry. Brenda began to pass the tractor-trailer by speeding up to approximately 55 miles per hour. Just as her vehicle's front was about ten feet from the front of the trailer Gotreaux decided to pass the car in front of him.
Gotreaux activated his left-turn signal and looked into his rear view mirror; seeing nothing he began to enter the left lane. Brenda sounded her horn (Gotreaux denied hearing a horn) to no avail. Brenda then went off onto the left shoulder of the road and lost control of her vehicle. Gotreaux heard the sound of gravel hit his truck and saw Brenda's truck half on the shoulder and road. He immediately applied his brakes. Brenda's truck then passed in front of him, crossed the highway on the righthand side, struck four small trees in the ditch and ran up on a fifth tree which caused the truck to overturn onto its driver's side. Gotreaux and a driver of another passing automobile pulled the two women from the wreck.
The injuries suffered by Brenda appeared, at first, to be insignificant; only a slight cut to the knee and bruises to the leg. However, she later suffered low back pains which have subsequently been diagnosed as a compression fracture of the L-4 vertebra with disc deterioration. (The extent of this injury will be discussed in our section "Quantum," infra.)
Originally named as defendants to this suit were Ryder Truck Rentals, Inc., the lessor of the tractor-trailer; Borden, Inc.; G. B. Lowe, the distributor of Borden products; his employee and driver of the tractor-trailer, Ivan C. Gotreaux, and Sentry Insurance Company. Summary judgment *620 was signed February 24, 1978, in favor of Ryder Truck Rentals, Inc. dismissing it from the suit at plaintiffs' prejudice. Plaintiffs voluntarily dismissed Sentry Insurance Company without prejudice on September 13, 1979.
This suit was tried by a jury. The jury found: Gotreaux to be negligent and the proximate cause of the accident; Brenda free of negligence and her damages to be $50,000.00 along with $366.00 which was stipulated to be the loss suffered by her father, Alfred Doucet ($216.00 rental car expense, $50.00 wrecker fee, $100.00 deductible on his insurance which covered the truck). From this adverse judgment, defendants filed a suspensive and/or devolutive appeal alleging various errors. Plaintiffs answered the appeal seeking an increase in the award of damages.
Defendants appeal, urging the following errors:
(1) The jury charges were such that the jury was deprived of its determination of what was reasonable conduct of the parties;
(2) The jury erred in not finding Brenda negligent for failing to sound her horn when passing the tractor-trailer; and
(3) The award of damages was excessive.

JURY CHARGES AND LIABILITY
Defendants contend that the jury charges given by the trial court, with respect to the duty to sound a horn when passing, were erroneous. We have reviewed the charges given by the trial court, pertaining to the circumstances under which a motorist must sound his horn when executing a passing maneuver, and find the charges clearly correct.
The charges are based upon the provisions of LSA-R.S. 32:351, as interpreted by the cases of Bacon v. Kansas City Southern Railway Company, 373 F.2d 515 (5th Cir. 1967);[1]Soileau v. Hanover Insurance Company, 232 So.2d 128 (La.App.3rd Cir. 1970);[2]Sevin v. Diamond M Drilling Company, 261 So.2d 375 (La.App. 1st Cir. 1972).[3]
We find no departure from the law in these instructions.
As to liability, defendants argue that the jury erred in not finding Brenda negligent for failing to sound her horn when she began the passing maneuver in question. We disagree.
The statute upon which defendants rely is LSA-R.S. 32:351, which provides, in pertinent part:
"A. ... The driver of a motor vehicle shall, when reasonably necessary to insure safe operation, give audible warning with his horn, but shall not otherwise use such horn when upon a highway of this state...." (Emphasis added.)
The statute does not require one to sound his/her horn when passing a vehicle upon any highway of the state unless it is reasonably necessary to safely execute the passing maneuver. The duty to sound a horn upon passing depends upon the facts of the case.
In the case of Ainsworth v. Bituminous Cas. Corp., 379 So.2d 1187 (La.App. 3rd Cir. 1980), writs den., 381 So.2d 1233, 1234 (La. 1980), this court affirmed a jury's determination that it is not negligence to attempt to pass a car without sounding a horn if it appeared reasonably safe to attempt the passing procedure. In construing the question of the passing motorist's negligence, *621 this court construed LSA-R.S. 32:351(A) in light of its longstanding ruling in Soileau v. Hanover Insurance Company, supra, at 130, which stated:
"[t]he purpose of requiring an overtaking motorist to sound his horn is to clear the roadway ahead of him when it is obstructed. When the preceding vehicle is occupying its own lane of traffic though traveling slowly, there is no duty on the part of an overtaking motorist to sound his horn."
There was no negligence in Ainsworth, supra, on the part of the defendant due to the fact that Ainsworth's car was occupying its own lane when defendant attempted to pass and, thus, defendant was under no duty to sound his horn.
Clearly, from the testimony deduced at trial, the Borden truck was occupying its own lane when Brenda began to overtake it. The truck had ceased its crossing over into the left (passing) lane. The cause of the accident was due to a blind spot in the rear view mirror in defendant's truck leaving the driver with the impression that the lane was clear and that he could begin to pass the vehicle in front of him. Brenda acted as a reasonably prudent person in passing the tractor-trailer. She was not required to sound her horn but stated that she did so when the tractor-trailer began to encroach into her lane. The jury was not clearly wrong in finding the driver of the tractor-trailer negligent in forcing Brenda off the road by encroaching in the left lane she already occupied, thus, precipitating the accident.

QUANTUM
Defendants argue that the award of damages to Brenda was excessive. Plaintiffs answered the appeal seeking an increase in the damages award. We find the jury award to be neither excessive nor inadequate.
After the accident on August 17, 1976, Brenda returned to her home and took medication which was prescribed by her family physician, Dr. Archie B. Osborn. She continued to suffer lower back pains and had a physical examination by Dr. Osborn, including x-rays made on September 7, 1976. Dr. Osborn stated that the radiologist's report disclosed a lip fracture of the fourth lumbar vertebra. He then referred her to an orthopaedic surgeon, Dr. Daniel M. Kingsley, in Alexandria.
Dr. Kingsley examined Brenda on September 15, 1976, and reviewed the x-rays. He prescribed a muscle relaxant and noticed no symptoms of nerve damage. He did not find a fracture but felt, due to the pain and trauma, it was possible and, if so, then the damage to the bone could affect the nerves in the spinal column and cause the pain of which Brenda complained.
Brenda continued to complain to Dr. Osborn of continuing pain in her back and he referred her to Dr. William G. Akins, Jr., an orthopaedic surgeon in Lake Charles. Dr. Akins examined her on October 18, 1976. He took x-rays, multiple views, of her spine. The x-rays revealed "a fracture of the L-4 vertebra at a portion called the anterior-superior margin, and that means the front and top portion of the individual vertebra was fractured." The fracture was considered stable with minimal displacement which required no surgery or braces but merely a reduction of physical activity.
Brenda further saw Dr. Akins on November 19, 1976, January 17, 1977, March 11, 1977 and June 10, 1977. During this time he prescribed an exercise regimen. He assigned a two percent disability of the body. He further stated that following such a fracture permanent damage could be done to the disc, the cushion between the third and fourth vertebrae. It was his opinion that Brenda's injuries and disability were permanent and may lead to further complications in the future. On each of Brenda's visits she complained of low back pain upon stooping or continuous sitting and an aching sensation whenever she does exercises and participates in sports. Dr. Akins stated that he would defer to Dr. Webre for his prognosis of Brenda's future condition as Dr. Webre had seen Brenda for a period of about three years after he had last seen her.
*622 After graduating from Elizabeth High School, Brenda began attending the University of Southwestern Louisiana in Lafayette. She continued having low back pains. She consulted an orthopaedic surgeon in Lafayette, Dr. Fred C. Webre. Dr. Webre first saw her on October 31, 1977, and he took a series of lumbosacral x-rays as well as conducted a routine physical examination. He identified a healed compression fracture of the L-4 vertebra. He further saw Brenda on April 5, 1979, August 30, 1979, February 27, 1980, February 18, 1981 and June 25, 1981. He stated that she suffers pain while exercising and participating in sporting activities. He also found a noticed narrowing of the L-3-4 interspace. Dr. Webre concluded that Brenda has a defect in her back as reflected in the x-rays and that she had a permanent disability of the body which he assessed at fifteen percent which was attributable to the accident.
Dr. Webre stated that pain will be experienced in exercise and sporting activities and that she will be unable to engage in any heavy work in the future. He stated that the narrowing of the interspace is a result of what is called a "ruptured disc" and that for a 20 year old person, fifteen percent disability is not unusual. Further he testified that upper back pain of which she had complained is not uncommon with this condition.
Defendants had Brenda examined by Dr. Norman P. Morin, an orthopaedic surgeon in Lake Charles, on May 26, 1979. He made x-rays of her back and assigned a five percent partial permanent disability of the back. We note, however, that Dr. Webre's assessment was based on visits in 1979, 1980 and 1981. The further degeneration of the disc interspace became more and more pronounced over the course of time.
After the testimony of the physician was presented to the jury, it returned a verdict in favor of plaintiff for damages in the amount of $50,000.00. We have reviewed the medical testimony as well as that of various other witnesses and Brenda concerning her pain and suffering since 1976. We note that the disability, due to the defect, has grown progressively worse as time has elapsed. The disability progressed from five percent to fifteen percent of the body as a whole. The medical evidence preponderates that the defective disc condition will worsen in the future. We cannot conclude that the jury's determination was erroneous given all the circumstances. We find the award neither excessive nor inadequate.
For the foregoing reasons, the judgment of the trial court is affirmed. All costs of this appeal are assessed against defendants-appellants.
AFFIRMED.
NOTES
[1] A driver attempting to overtake and pass another motor vehicle is required by law to sound his horn so as to give adequate audible warning to the driver ahead of his intention to pass, providing that this is reasonably necessary in order to complete safe operation.
[2] An overtaking vehicle is only required to sound its horn when there is not sufficient clearance in the passing lane to pass; under those circumstances the horn is sounded merely to warn the preceding vehicle that it must give way to the right in order to provide such clearance.
[3] Once the overtaking motorist establishes his right of way over the preceding motorist by being in the passing lane before the preceding motorist pulls to the left to also attempt to pass, it is irrelevant whether or not the overtaking motorist first sounds his horn.