496 So.2d 1386 (1986)
T & G SALVAGE, INC., Plaintiff-Appellant,
v.
PORT PETROLEUM, INC., Defendant-Appellee.
No. 85-1196.
Court of Appeal of Louisiana, Third Circuit.
November 5, 1986.
*1387 Gordon, Arata, McCollam, Stuart & Duplantis, Ewell E. Eagan, Jr., New Orleans, for plaintiff-appellant.
Smitherman, Lunn, Chastain & Hill, Richard E. Schmidt, Shreveport, for defendant-appellee.
Before FORET, STOKER and LABORDE, JJ.
LABORDE, Judge.
Plaintiff, T & G Salvage, Inc. (T & G) brought suit against Port Petroleum, Inc. (Port) seeking a judgment of $90,000 for past due rent under a contract of lease. The suit was filed after Port, the lessee, attempted to cancel the lease through the use of a lease termination clause. The trial court found that Port had properly canceled the lease under article 10 of the lease and, therefore, was not liable for any past due rental payments. We affirm.

FACTS
On November 18, 1982, plaintiff, T & G, entered into a contract of lease with defendant, Port; whereby, Port would operate a waste reclamation plant in Jena, Louisiana, recently purchased by T & G for $200,000. The five year term of the lease contained numerous provisions outlining the respective liabilities and warranties of the lessee and lessor. The parties agreed in article 10 of the written contract, that, "[i]f for any thirty day period no operable quantities of waste oil are reasonably available, the minimum rental cited in article III above shall be suspended and this agreement, at the sole option of the lessee, may be canceled." Pursuant to the lease, the defendant renovated the plant, spending approximately $76,000. Defendant operated the plant for approximately one year with rent totaling $110,000. On November 28, 1983, Port attempted to cancel the lease in accord with the above quoted article 10 of the lease on the grounds that there were no operable quantities of waste oil reasonably available to defendant for the thirty day period immediately preceding notice of cancelation.
The sole issue on appeal is the interpretation of the following provision in the lease:
"If for any thirty day period no operable quantities of waste oil are reasonably available, the minimum rental cited in Article III shall be suspended and this agreement, at the sole option of the lessee, may be canceled."
LSA-C.C. art. 2045 provides that a lease should be interpreted according to the common intent of the parties. The lower court found that the common intent of the parties in making this contract was to make money. The court further found that with regards to article 10, the intent of the parties was to provide "a way out of the lease for defendant in the event there was insufficient waste oil available for defendant to operate the plant in a manner reasonably calculated to achieving its goal of making a profit."
On appeal, plaintiff argues that the trial court judgment interpreted the lease as a guarantee of profit. Although we agree that making a profit is the standard by which most businesses operate, we cannot say that the interpretation of article 10 by the trial court was based on the premise that the waste oil reclamation plant would be profitable. By using the words "reasonably calculated to achieving its goal of making a profit," the trial court indicates to us that making profit is one factor considered in ascertaining "the amount of waste oil necessary to operate the plant in a manner previously described, and the amount of waste oil reasonably available to defendant." The record indicates that neither T & G nor Port anticipated the profitability of the waste reclamation plant to be a deciding factor as to whether the lease could be canceled. In interpreting the applicability of article 10, the trial judge wisely considered all factors available to it in determining whether operable quantities of waste oil were reasonably available to Port. On appeal, if we conclude that the trial *1388 judge interpreted article 10 of the lease as a guarantee of profit, we would surely reverse. However, based on the testimony of witnesses of T & G and Port, profit was never contemplated or guaranteed in any form in drawing up the contract of lease.
Plaintiff's argument relies in part on La. C.C. art. 2056 which provides that in case of doubt that cannot otherwise be resolved, a contract provision must be interpreted against the party who furnished its text. Although we recognize the article as pertinent in most standard form contracts, we do not see it as applying in this situation.
Evidence at trial conclusively established that negotiations between T & G and Port were conducted in good faith and at arms length and that the resulting lease was favorable to both parties. Both T & G and Port were represented by counsel and had ample time to clarify or change any provisions of the lease. Furthermore, the lease was not a form contract provided by lessee in which the lessor was required to participate.
At trial, numerous witnesses testified as to the intent of the parties and the meaning of article 10 of the lease. The phrase "operable quantities of waste oil" was first discussed by a Mickey O'Conner, President of T & G Salvage, Inc., in testimony given at trial. O'Conner testified "that if they didn't have enough oil in the area to support the operation that we would cancel the lease." Further testimony by O'Conner reveals that he understood "operable quantities of waste oil reasonably available" to mean that there was enough oil to operate the plant. Testimony was never elicited as to the exact amount of oil necessary for there to be operable quantities of waste oil.
Plaintiff put on further evidence through the testimony of Doyle Deville, a local hauler and vacuum truck owner. Deville was involved in discussions with Gregory Allen, the original owner of the waste reclamation plant, and T & G, as to the availability of waste oil in the area. Deville testified that he was available to assist Port in obtaining waste oil to use in the waste reclamation plant. Furthermore, Deville was involved in obtaining "S-1s," a state permit necessary for removing waste oil from a wastepit, and with hauling waste oil to waste reclamation plants. It was elicited through testimony that Deville would sell the waste oil to Port by charging $4 a barrel or approximately $700 per day. Deville further testified that Port could have the waste oil under his S-1 and that there were numerous waste pits in the area which Port could have obtained.
Deville's testimony is in direct conflict with the testimony of Jack R. Malone, an employee of Port Petroleum, who testified at length as to the availability of waste oil. Malone testified as to measures he took through newspaper ads and by contacting numerous producers in the area to obtain waste oil pits. Malone further testified that producers in the area were beginning to treat their own oil instead of giving it to waste reclamation plants. Additionally, the pit offered by Doyle Deville was only available at $4 per barrel. Furthermore, Malone testified that a recent flood had wiped out some of the waste pits in the area further diminishing the amount of waste oil available to Port.
As a reviewing court, we must give great weight to the factual findings and conclusions of the trier of fact, the judge, and where there is a conflict in testimony, the reasonable evaluations of credibility and the reasonable inferences of fact reached by a judge or jury shall not be disturbed. This rule must be followed even though the appellate court may feel that its own evaluations and inferences are just as (or more) reasonable. Thomas v. Missouri-Pacific R. Co., 451 So.2d 1152 (La. App.3d Cir.1984). The trial court held that the amount of available waste oil declined during the lease term. The trial judge put much credence in the testimony of Ted Christensen, assistant vice president of refining for Port, in determining that in order to recoup Port's investment that another 250,000 barrels would have to be available.
The plaintiff contends in his brief that there were large quantities of waste oil available; however, as the trial judge stated in written reasons assigned, in pertinent part:

*1389 "the amount of reasonably available waste oil declined during the lease term. This decline occurred due to several causes including a flood which resulted in the loss of many waste oil pits. Also several major operators in the area decided to treat their own oil. Plaintiff contends that large quantities remained available to defendant. However, the contract specifies that the waste oil must be `reasonably available.' Much of the remaining waste oil belonged to several companies who had granted exclusive rights to their waste oil to Doyle Deville. Deville then charged approximately four ($4) dollars per barrel for the waste oil. Since waste oil reclamation plants depend on waste oil being free in order to make a profit, this development meant that even more waste oil was not `reasonably available.'"
We have scrutinized the record and cannot say that the trial court's findings are clearly erroneous. The record as a whole establishes that the credibility of the witnesses and their individual testimony was a major factor in deciding in favor of the defendant-appellee.
For the above and foregoing reasons, we affirm the judgment of the trial court. All costs of this appeal are assessed to the appellant, T & G, Inc.
AFFIRMED.