509 So.2d 575 (1987)
Cyril J. ROBERT & Diane R. Robert, Plaintiffs-Appellants,
v.
Barry J. ALBARADO & the State of Louisiana, Through the Department of Transportation & Development, Defendants-Appellees.
No. 86-394.
Court of Appeal of Louisiana, Third Circuit.
April 8, 1987.
Writ Denied June 12, 1987.
*577 William J. Aubrey, Gordon Square, Lafayette, for plaintiffs-appellants.
Grady C. Weeks and William A. Stark of Weeks and Stark, Houma, Albert M. Karre, Lafayette, for defendants-appellees.
Before DOMENGEAUX, GUIDRY and STOKER, JJ.
GUIDRY, Judge.
This case arises out of a two car accident on Louisiana Highway 339 at the point where said highway makes a "T" intersection with C. Broussard Road, a parish road in Lafayette Parish. Louisiana Highway 339 runs north-south and C. Broussard Road terminates at its eastern end at Hwy. 339. Plaintiffs sought judgment against Barry J. Albarado, the driver of the other vehicle, and the State of Louisiana through the Department of Transportation and Development (DOTD). As to the latter, plaintiffs contend that DOTD is liable, in that, it failed to do the following:
(1) warn north bound motorists of the approaching intersection by placement of a road sign;
(2) mark the highway with a solid yellow line indicating a "no passing" zone;
(3) warn motorists of an upcoming bridge by placement of a road side sign; and,
(4) place guard rails along the roadway leading to the bridge abutments.
The accident occurred on December 1, 1981, a clear, dry day, at approximately 9:00 a.m. At the time of the accident, Hwy. 339 (Verot School Road or V.S.R.) was marked with a single dashed centerline which ran through the junction of Highway 339 and C. Broussard Road and across a small bridge to the north of the intersection. There were no highway markings prohibiting passing or road signs indicating the upcoming junction or bridge.
Plaintiff, Diane R. Robert, testified that she was driving her vehicle in a northerly direction on V.S.R. when she overtook a slow moving pick-up truck owned and operated by defendant, Barry Albarado, also proceeding north bound. The section of roadway the vehicles were traversing was a two lane, two way, black-topped highway in a rural section of Lafayette Parish. Mrs. Robert stated that, after ascertaining there was no oncoming traffic and no apparent impediments to safely passing the slower moving pick-up, she initiated a passing maneuver by activating her left turn blinker and pulling into the left (southbound) lane of traffic. Plaintiff-appellant testified that defendant never activated his left turn signal and, as she pulled even with or slightly ahead of the Albarado vehicle, Albarado suddenly, without warning, initiated a left turn into a minor side road whose junction with the main road was not readily apparent.
Mrs. Robert maintained that defendant's maneuver caused the left front of his vehicle to strike the passenger side of her station wagon, resulting in her vehicle being thrown off the paved surface of the roadway. She explained that the suddenness and force of the collision combined with the loose gravel, dirt and grass on the shoulder of the highway prevented her from regaining sufficient control of her vehicle to bring it back onto the roadway before it struck the concrete bridge abutment. The impact resulted in appellant sustaining serious disabling personal injuries and the total loss of the Robert vehicle.
Defendant, Barry Albarado, testified that he and his brother, Mark, were on the way to feed defendant's horse, which he stabled on C. Broussard Road, when they stopped at Boutte's Store, approximately two miles south of the accident site, to get something to eat. Barry stated that upon leaving the store, he accelerated to approximately 45 m.p.h. and did not start to decelerate until he was about 1500 feet from C. Broussard Road (C.B.R.). Albarado claimed that he gradually applied his brakes, approximately 500 feet from C.B.R., and by the time he started to make his turn, his speed had decreased to between 5 and 15 m.p.h.
Albarado testified that he did not see plaintiff's vehicle prior to the crash, even though he checked his rear view mirrors (one inside and two outside) at least twice *578 before he commenced his turn. Furthermore, he asserted that he activated his turn signal before attempting to exit the highway. This testimony was corroborated by defendant's brother, Mark.
The learned trial judge, in his well written "Reasons for Ruling", made the following findings:
"Based upon the facts of the case as applied to the law, the Court finds DIANE R. ROBERT negligent in the following respects:
(1) Failing to observe the Albarado left turn signal;
(2) Attempting the passing maneuver when, under the circumstance then and there prevailing, the same could not be done with safety;
(3) Failing to give audible warning of such passing maneuver.
The Court finds BARRY J. ALBARADO negligent in the following respects:
(1) Attempting the left turn maneuver without making sure that there was no overtaking traffic threatened thereby i.e. the Robert vehicle; and
(2) In failing to maintain a proper lookout with respect to such overtaking traffic.
Based upon the facts of the case as applied to the law, the Court finds the following negligence of the parties:

DIANE R. ROBERT 40%
BARRY J. ALBARADO 60%
 ____
 100%

....
This Court cannot find sufficient basis to hold the State of Louisiana liable in either negligence or strict liability. The Court can find no law or standards which require the State to make a `no-passing zone' via solid lines, nor post a `no passing sign' on Highway 339, the preferred highway, with respect to C. Broussard Road, the inferior road which has a `T' intersection access with such preferred highway on a straight away with a clear, unobstructed view of the intersecting road (especially where, as here, the sheer numbers of such connecting inferior roads and the heavy population density of the area, would require virtually an unending no-passing zone literally for miles).
Likewise, the Court does not find the shoulders or lack of guard rail on the bridge to be defective conditions. Even with guard rails, the plaintiffs did not prove Mrs. Robert's injuries would have been prevented or mitigated. Accordingly, the Court finds neither negligence nor liability under the strict liability doctrine on the part of the State."
The trial judge calculated the past medical expenses of Mrs. Robert as $45,221.00 and made the following damage awards:
"... [T]he Court makes the following awards to plaintiffs, DIANE R. ROBERT and CYRIL J. ROBERT, and against BARRY J. ALBARADO (subject to the negligence apportionment).

Medical expenses, past and future $ 65,000.00
Loss of vehicle 5,375.00
Past and future loss of earnings 200,000.00
General Damages 300,000.00
 ___________
TOTAL $570,375.00

Such amount should be reduced by the negligence apportioned to plaintiff of 40%. Accordingly, plaintiffs are entitled to receive and are awarded 60% of such $570,375.00, or the amount after such apportionment of THREE HUNDRED FORTY-TWO THOUSAND TWO HUNDRED TWENTY-FIVE AND NO/100 ($342,225.00) DOLLARS against defendant, BARRY J. ALBARADO."
Judgment was rendered in accordance with the reasons stated on October 14, 1985. From that judgment, plaintiffs appealed urging 17 assignments of error (see Appendix).
The 17 assignments of error raise the following four issues:
(1) Did the trial court err in finding plaintiff, Diane Robert, at fault; and, if not, was it error to assess her fault at 40%?
(2) Did the trial court err in finding DOTD free from fault?
(3) Did the trial judge abuse his much discretion in his award to plaintiff for *579 future lost earnings and/or in not awarding child care expenses?
(4) Did the trial judge err in allowing DOTD to introduce evidence as to plaintiff's contributing negligence in light of DOTD's admission as to fault of defendant, Barry J. Albarado?
The evidence adduced at trial indicated that the accident happened as a result of the inattentiveness of one or both of the drivers. The trial judge found that both drivers had been inattentive. Mrs. Robert was found negligent because she did not see defendant's turn signal; she passed under unsafe conditions; and, she did not sound her horn before passing. Barry Albarado was found guilty of negligence because he did not see the Robert vehicle in his rear view mirrors and attempted a left turn when it could not be safely made. The trial court found the State, through DOTD, free from fault.
The only factor alluded to by plaintiffs in their attempt to show fault on the part of DOTD is the alleged lack of proper markings and/or signs reflecting the presence of an intersection and a no passing zone in advance thereof. The trial court determined that, under the particular circumstances present, such signing was not required and DOTD was not otherwise negligent. The record fully supports this conclusion.
Expert testimony established that the intersection where the accident occurred was a minor, low volume intersection which required neither "no passing" zone signs nor double solid yellow centerline markings.
Lawrence C. Harry, District Traffic Operations Engineer for District III, an eight parish area which includes Lafayette Parish, testified that the state Manual on Uniform Traffic Control Devices and the state Engineering Directives and Standards Manual control the striping and signing of highways in Louisiana. Those manuals directed that engineering studies be made of intersections as the one in question (those intersections which were not controlled by traffic control devices) to determine if said intersections required "no passing" striping or intersection warning signs. Mr. Harry stated that such a survey had been made of the intersection of Verot School and C. Broussard Roads within a three to five year period preceeding the accident and said study concluded that the intersection at which the accident occurred was located on a long, straight tangent section of roadway containing no sight restrictions. Elaborating, Harry informed the court:
"... [T]his is a minor, very low-volume intersection. And using any criteria here for posting signs, additional striping or whatever, at this location, if this one (1) was deemed to be requisite of having these signs, this particular road, within within Lafayette Parish, may have a couple of hundred (200) intersections. This is probably one (1) of the most minor of the entire bunch. And if you were to mark this any different than what it is, then the same criteria would apply to any other intersection on this same piece of highway. And what you'd have is a forest of signs. They'd lose effect. You'd have a complete `no passing' zone, from one (1) end to the other.... `No passing' zones do serve a purpose. If you over-use them, then people will start to disregard them. This is treated in the manual. Overuse of any traffic control breeds disrespect and contempt and disregard. If you over-mark the highway, they will start passing in the `no passing' zones where they are critically needed."
Our review of the record reflects the trial court's finding that DOTD was free from fault to be fully supported by the testimony and evidence.
We likewise find the trial court's conclusions with regard to the fault of the motorists to be supported by the record and not clearly wrong. Canter v. Koehring Company, 283 So.2d 716 (La.1973); Arceneaux v. Domingue, 365 So.2d 1330 (La.1978).
There being no clear error in the trial court's determination that Albarado activated his left turn signal reasonably in advance of the C. Broussard Road intersection, Mrs. Robert was negligent in failing *580 to heed this signal and attempting to pass under unsafe conditions. However, we do not agree that an overtaking motorist must always give audible warning of his intention to pass. See La.R.S. 32:351; Doucet v. Ryder Truck Rental, Inc., 415 So.2d 618 (La.App. 3rd Cir.1982); Ainsworth v. Bituminous Casualty Corp., 379 So.2d 1187 (La.App. 3rd Cir.1980), writ denied, 381 So.2d 1233, 1234 (La.1980).
Likewise, there is ample evidence in the record supporting the trial court's conclusion that Albarado was negligent for failing to see what he should have seen and attempting a left turn when it could not be made in safety.
The instant case closely parallels the case of Hughes v. Whitten, 276 So.2d 405 (La.App. 2d Cir.1973). The Hughes case also involved an accident between a left-turning and a passing motorist. The court found both motorists negligent and, under the then prevailing doctrine of contributory negligence, denied recovery. The court found:
"The only witnesses to the accident were the two drivers. Plaintiff testified she put on her left-turn blinker light about 150 feet from the intersection, slowed down, looked in her inside rear view mirror and saw no cars behind her, commenced her left turn, and as she was turning saw defendant's passing vehicle just prior to impact. Defendant testified she was following plaintiff's vehicle, noticed plaintiff slowing down but saw no left-turn signal, started passing plaintiff who suddenly made a left turn in front of her, and in spite of swerving to the left she was unable to avoid the collision.
. . . . .
Defendant was negligent in attempting to pass plaintiff's slow-moving vehicle at an intersection, regardless of whether plaintiff had activated her left-turn signal. [citations omitted].
Plaintiff was negligent in failing to observe defendant who had already commenced the passing maneuver prior to plaintiff beginning her left turn. Plaintiff's own testimony is to the effect that defendant was passing and in the "blind spot" when plaintiff looked in her inside rear view mirror and failed to see her. The physical evidence bears this out as the collision occurred when plaintiff's car had only traveled a very few feet after beginning its left turn. Plaintiff did not look in her outside rear view mirror, nor did she look back over her left shoulder. Plaintiff was not entitled to rely on the assumption that the following driver will obey the law and not pass at an intersection, where prior to beginning the left turn she could have and should have seen defendant already engaged in the passing maneuver. She is held to have seen what she should have seen."
276 So.2d at 405, 406.
In a similar situation, in Scrantz v. Aetna Casualty and Surety Co., 281 So.2d 820 (La.App. 1st Cir.1973), our brethren of the First Circuit found:
"A left-turning motorist cannot discharge his burden of ascertaining whether the turn can be made in safety by making his observation some distance from the intersection, but he is required to look to his rear immediately before attempting the turn. Ulmer v. Travelers Insurance Company, 156 So.2d 98 (La. App. 1st Cir.1963). The physical facts clearly show that Mrs. Whittington was already in the passing lane and overtaking the plaintiff at the time he commenced his turn. Plaintiff failed to look to his rear again just prior to commencing his turn. Had he looked again, as he was required to do, he would have seen the defendant's vehicle overtaking him in violation of the no-passing zone. At this point plaintiff could no longer indulge in the presumption that the overtaking motorist would obey the law, and his actions in commencing his left turn when it was unsafe to do so amounted to contributory negligence on his part."
While it is clear from the foregoing that the defendant was obviously at fault in causing the accident, his fault does not serve to exculpate plaintiff. The trial judge specifically found that plaintiff failed to see the defendant's turn signal, choosing to believe the testimony of defendant and *581 his brother who stated that Barry activated his left turn signal prior to commencing his turn, rather than that of plaintiff who claimed there was no such signal.
Recently a panel of this court commented on the role of an appellate court in reviewing a trial judge's ruling on conflicting testimony stating:
"As an appellate court, it is most difficult for us to judge the credibility of the witnesses simply by reading the cold record. The trial court is in a far superior position to make this judgment as it observes the demeanor of the witnesses. The trial court can note first-hand the facial expressions, the tone of the voice, the posture, the eye contact, and the innumerable other factors which are indicative of a person's truthfulness as he testifies. When, as here, the evidence is conflicting, an appellate court should not disturb the trier of fact's reasonable evaluation of one set of witnesses as credible, and its consequent rejection of the testimony of the opposing set of witnesses; nor should we disturb the trier of fact's reasonable factual inferences drawn from such testimony found by it to be credible. Billiot v. Bourg, 338 So.2d 1148, 1152 (La.1976)...."
Boullion v. Romero, 490 So.2d 788 (La. App. 3rd Cir.1986) at 789.
Another panel of this court reminded us that we are not free to substitute our own evaluations of facts for that of the trier of fact where, in T and G Salvage, Inc. v. Port Petroleum, Inc., 496 So.2d 1386 (La. App. 3rd Cir.1986), the court stated:
"As a reviewing court, we must give great weight to the factual findings and conclusions of the trier of fact, the judge, and where there is a conflict in testimony, the reasonable evaluations of credibility and the reasonable inferences of fact reached by a judge or jury shall not be disturbed. This rule must be followed even though the appellate court may feel that its own evaluations and inferences are just as (or more) reasonable. Thomas v. Missouri-Pacific R. Co., 451 So.2d 1152 (La.App. 3d Cir.1984)...."
We likewise feel constrained to affirm the trial judge's apportionment of fault:
"The percentage of damages apportioned to each codefendant by a trial court is a factual determination. McCaskill v. Welch, 463 So.2d 942 (La.App. 3rd Cir.1985), writ denied, 466 So.2d 469 (La. 1985); Triangle Trucking Co. v. Alexander, 451 So.2d 638 (La.App. 3rd Cir.1984). An appellate court may not disturb a trial court's findings and conclusions of fact in the absence of clear or manifest error, or abuse of discretion. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978)."
Central Louisiana Elec. Co. v. Cox Const., 471 So.2d 1117 (La.App. 3rd Cir. 1985). Although this case involves the apportionment of damages between plaintiff and defendant, the principles are the same as those in Central Louisiana Elec. Co., supra.
Appellant also complains that the trial court erred in allowing DOTD to elicit testimony and introduce evidence relative to plaintiff's fault when, in its answer to plaintiff's suit, DOTD admitted appellant's allegations of fault on the part of defendant, Albarado.
We find this issue to be without merit. As this court explained in First Homestead Fed. Sav. & Loan v. Coleman, 446 So.2d 551 (La.App. 3rd Cir.1984):
"LSA-C.C. Art. 2291 provides as follows:
"The judicial confession is the declaration which the party, or his special attorney in fact, makes in a judicial proceeding.
It amounts to full proof against him who has made it.
It can not be divided against him.
It can not be revoked, unless it be proved to have been made through an error in fact.
It can not be revoked on a pretense of an error in law."
"A judicial admission or confession under Article 2291 is a party's express acknowledgment of the correctness of the fact or the act charged against him by his adversary. Am. Employers Ins. v. Honeycutt Furniture Co., 390 So.2d 255 (La.App. 3rd Cir.1980). A judicial confession *582 has the effect of waiving evidence as to the subject of the admission. Crawford v. Deshotels, 359 So.2d 118 (La.1978). A judicial confession must be explicit and not merely implied. Hoffman v. Hoffman, 430 So.2d 149 (La.App. 2nd Cir.1983); X-L Finance Company v. LeDoux, 215 So.2d 164 (La.App. 3rd Cir. 1968)." (Emphasis ours).
DOTD's answer did not admit the correctness of any fact or act charged against the department, rather, DOTD merely agreed with plaintiff, that defendant Albarado had been negligent. It is obvious that such agreement was nothing more than an integral part of DOTD's defense and, as such, could not be construed in such a manner as to limit any of its other defenses, i.e., the concurrent negligence of the plaintiff.
Finally, we must examine the damages awarded. At the commencement of the proceedings, counsel entered into several stipulations, two of which are of import here: (1) all medicals to the date of trial totalled $47,764.50; and (2) child care expenses claimed by the plaintiff to the date of trial equalled $4,044.38. In his reasons for ruling, the trial judge itemized the past medical expenses awarded as $45,221.60. In light of the stipulation entered into by counsel, this was clearly erroneous and we amend the judgment up to the stipulated amount of $47,764.50.
No award for child care is itemized in the court's judgment or reasons, although it was stipulated at trial that the sum of $4,044.00 in child care expenses was actually incurred by the Roberts as a result of Mrs. Robert's injuries. We conclude that the omission of this item from the trial court's award was an inadvertent omission and we will amend the judgment accordingly.
Appellant also complains that the award of $200,000.00 for past and future loss of earnings is inadequate to such an extent as to constitute an abuse of the trial court's much discretion.
The trial judge did not segregate his award for past lost wages and future loss of wages but simply granted an in globo award of $200,000.00.
It was established at trial that appellant will never be able to return to full time employment. Although plaintiff's employer, her brother-in-law, testified that her rate of pay at the time of the accident was $10.50 per hour, he admitted that she had not yet received a check based upon that rate, but rather had been paid at the rate of $8.50 per hour. Testimony was elicited to show that plaintiff had worked at her then current job for approximately ninety days prior to the accident, averaging about 35 hours per week. Thirteen weeks of employment at 35 hours per week at $8.50 per hour would equal gross wages of $3,867.50. However, plaintiff's W-2 form, which was introduced in evidence, reflects that for her employment during such period, she earned a gross income of $1,856.00, which reflects a wage rate of $4.12 per hour.
Plaintiffs and defendants both presented expert testimony on the issue of lost wages, past and future. These experts, using formulas employing various rates of remuneration, discounts, and work life expectancies, presented estimates of future loss of wages ranging from $168,209.81 to $544,408.87. Likewise, the experts presented estimates of past lost wages ranging from $21,548.00 to $49,386.00.
We do not find the trial court's award of $200,000.00 for these items of damages to be clear error or an abuse of discretion. The record reflects a reasonable factual basis for the trial court's acceptance of a past loss of wages award in the lower range. Awards for future lost wages are inherently speculative and are not subject to calculation with mathematical precision. Keith v. Bearden, 488 So.2d 1071 (La.App. 2d Cir.1986), writ granted, 491 So.2d 13 (La.1986), and cases therein cited.
For the above and foregoing reasons, we increase the total award by the sum of $6,587.00, i.e., $2,543.00 (the difference between the stipulated amount of medical expenses and that awarded by the trial court) and $4,044.00 (the stipulated amount of child care), to the end that there is *583 judgment in favor of plaintiffs, Cyril J. Robert and Diane R. Robert, and against defendant, Barry J. Albarado, in the full sum of THREE HUNDRED FORTY-SIX THOUSAND ONE HUNDRED SEVENTY-SEVEN AND 20/100 ($346,177.20) DOLLARS together with judicial interest on said amount from November 30, 1982, until paid. In all other respects, the judgment appealed from is affirmed. Appellant is cast for all costs of this appeal.
AFFIRMED AS AMENDED.

APPENDIX

IV. ASSIGNMENTS OF ERROR
1.) The Trial Court erred in finding credible the Albarado testimony that defendant, Barry J. Albarado, had activated his left turn signal prior to the accident.
2.) The Trial Court erred in finding plaintiff, Diane R. Robert negligent in failing to observe the Albarado left turn signal.
3.) The Trial Court erred in finding plaintiff, Diane R. Robert negligent in attempting the passing maneuver when, under the circumstances then and there prevailing, the same could not be done with safety.
4.) The Trial Court erred in finding Diane R. Robert negligent in failing to give an audible warning of such passing maneuver.
5.) The Trial Court erred in finding Diane R. Robert 40% negligent.
6.) The Trial Court erred in not finding that the plaintiff could not return safely to the highway once she had dropped or had been knocked off of the road surface onto the shoulder.
7.) The Trial Court erred in not finding sufficient basis to hold the State of Louisiana liable in either negligence or strict liability.
8.) The Trial Court erred in not finding law or standards which require the State of Louisiana Department of Transportation and Development to prohibit passing in and through intersections.
9.) The Trial Court erred in apparently finding that a motorist on Louisiana Highway 339 had a clear, unobstructed view of the intersecting road, C. Broussard Road.
10.) The Trial Court erred in finding that in the instant case, the "sheer numbers of such connecting inferior roads and the heavy population density of the area, would require virtually an unending no-passing literally for miles."
11.) The Trial Court erred in not finding the shoulders on Louisiana Highway 339 to be defective.
12.) The Trial Court erred in not finding the lack of a guard rail on the bridge on Louisiana Highway 339 to be defective.
13.) The award of the Trial Court was as to past and future loss of earnings was so low as to constitute a clear abuse of discretion.
14.) Trial Court erred in not awarding special damages for payment of child care expenses during the period of plaintiff's disability.
15.) The Trial Court erred in not ruling on plaintiff's objection that certain judicial admissions or confessions made by the State of Louisiana barred The State of Louisiana from presenting any evidence as to the contributory negligence of the plaintiff.
16.) The Trial Court erred in failing to find that judicial admissions or confessions by the State of Louisiana were binding against The State of Louisiana.
17.) The Trial Court erred in failing to rule on plaintiff's objections to the admissibility of any evidence or argument by the State of Louisiana Department of Transportation and Development as to negligence, contributory negligence or victim fault of the plaintiff.