GUIDRY, Judge.
Plaintiff, Frederick’s Machine and Tool Shop, Inc. (hereafter Frederick's), appeals a judgment of the trial court dismissing, with prejudice, its claims against defendant, In-tracoastal Seafood, Inc. (hereafter Intra-coastal), which is set forth in a petition entitled “Suit On Open Account”. We affirm.
Plaintiff alleges that defendant, Intra-coastal, a wholesaler of shrimp, owes it the sum of $1,578.13 plus attorney’s fees and interest in connection with repairs which Frederick’s made to the M.V. Aquilla on or about March 17, 1986.
The following facts were adduced at trial. Sometime during the second week of March 1986, plaintiff was contacted by one of Intracoastal's employees and notified that a boat (the M.V. Aquilla) at defendant’s dock was in need of repair. This vessel was not owned by Intracoastal and Frederick’s was aware of this fact. Frederick’s undertook and completed the repairs for a total cost of $3,078.13. When the repairs were completed, Frederick’s was given a $1,000.00 check drawn on defendant’s bank account as partial payment for the repairs. On May 12,1986, a second check, this one for $500.00, was issued by defendant to plaintiff representing an additional partial recompense for the Aquilla’s repairs. Thereafter no further payment was received by Frederick’s.
Plaintiff claims that it refused to make the needed repairs unless the payment for the work was guaranteed by defendant. As proof of this assertion, Frederick’s introduced an invoice for the repairs made out to both Intracoastal and the “Boat Aquilla” which was signed by Johnny Scott, the manager of Intracoastal at the time the repairs were made.
*695 James A. Frederick, owner of the plaintiff corporation, testified that he was present on the dock when his repair crew surveyed the damage to the Aquilla and that after discovering the extent of the repairs the boat needed, he told Johnny Scott he would not do the work unless Intracoastal guaranteed payment. According to Frederick, Scott told him that this would pose no problem as Intracoastal routinely guaranteed work for the boats with which it dealt.
Plaintiff also called Horace Womack, general manager of Intracoastal, on cross-examination. Womack admitted that Intra-coastal issued the two checks to Frederick’s on behalf of the Aquilla, but denied that this in any way indicated that defendant assumed liability for payment of the Aquilla’s repair costs. The witness explained that it was common practice for Intracoastal to withhold part of the proceeds from a vessel’s catch and forward same to the vessel’s creditors. Womack stated that the practice was done as a service to its suppliers and as a convenience to the businesses who serviced the boats dealing with Intracoastal.
Womack produced ledger sheets which showed this system was used to pay firms which supplied diesel fuel, ice, provisions and services to the shrimp boats with which they regularly did business. He admitted that on occasion, Intracoastal would advance funds to a vessel for needed repairs. However, he explained that if this was done, the ledger sheet would reflect the total amount advanced, i.e., the total cost of the repairs, would be paid directly to the firm making the repairs upon completion of the work. The ledger showed no such transaction in this case.
According to Womack, the lack of a ledger entry and his former manager’s signature on the invoice indicated that the owner of the Aquilla and Frederick’s had reached an agreement whereby Frederick’s would be paid out of the proceeds of future catches which the Aquilla would sell to Intracoastal and that Intracoastal would forward to Frederick’s that portion of the proceeds designated by the owner of the Aquilla when future catches were brought in.
Johnny Scott, who had been fired from Intracoastal by Womack, testified that while he (Scott) talked to Frederick’s about the repairs needed by the Aquilla, he informed Frederick’s that they should make their own arrangements with the owner of the Aquilla. Scott further stated that at no time did he indicate to Frederick’s that Intracoastal would guarantee payment for the Aquilla’s repairs. Finally, Scott testified that he signed the repair invoice, not on behalf of Intracoastal, but for the Vietnamese boat owner.
Plaintiff called only one other witness, Clarise Reed, an employee of the law firm representing Frederick’s, who testified concerning demand letters sent to defendant.
At the close of plaintiff’s case, defendant moved for dismissal of plaintiff’s suit pursuant to La.C.C.P. art. 1672(B):
“In an action tried by the court without a jury, after the plaintiff has completed the presentation of his evidence, any party, without waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal of the action as to him on the ground that upon the facts and law, the plaintiff has shown no right to relief. The court may then determine the facts and render judgment against the plaintiff and in favor of the moving party or may decline to render any judgment until the close of all the evidence.”
(formerly La.C.C.P. art. 1810(B)). The trial judge, concluding that plaintiff had failed to proye its case, granted defendant’s motion. This appeal followed.
On appeal, Frederick’s urges that it relied on the apparent authority of Johnny Scott to bind defendant for the services rendered to the M.V. Aquilla. A panel of this court, in Jennings v. City of Alexandria, 394 So.2d 718 (La.App. 3rd Cir.1981), stated:
“The plaintiff in a civil action bears the burden of proving by a preponderance of the evidence every element of fact essential to his recovery. Proof which establishes only possibility, speculation or unsupported probability is not sufficient to establish a claim.” (citations omitted)
*696 See also Ortego v. Durand, 419 So.2d 541 (La.App. 3rd Cir.1982), and Derouen v. State Farm Mutual Automobile Insurance Company, 445 So.2d 139 (La.App. 3rd Cir.1984).
“The proper standard to be applied by the trial court when a motion for judgment of dismissal is filed under LSA-CCP art. 1810(B) at the completion of the plaintiffs case, is that the trial judge must weigh and evaluate all of the evidence presented up to that point in the trial and must grant dismissal if the plaintiff has not established proof by a preponderance of the evidence. Bradley v. Hunter, 413 So.2d 674 (La.App. 3rd Cir.1982), writ denied 415 So.2d 952 (La.1982).”
Financial Corporation v. Estate of Cooley, 447 So.2d 594 (La.App. 3rd Cir.1984).
In the case at bar, the trial judge was presented with inconclusive physical evidence and conflicting testimony. This court, in Robert v. Albarado, 509 So.2d 575 (La.App. 3rd Cir.1987), writ denied, 510 So.2d 378 (La.1987), under similar circumstances, declared:
“Recently a panel of this court commented on the role of an appellate court in reviewing a trial judge’s ruling on conflicting testimony stating:
‘As an appellate court, it is most difficult for us to judge the credibility of the witnesses simply by reading the cold record. The trial court is in a far superi- or position to make this judgment as it observes the demeanor of the witnesses. The trial court can note first-hand the facial expressions, the tone of the voice, the posture, the eye contact, and the innumerable other factors which are indicative of a person’s truthfulness as he testifies. When, as here, the evidence is conflicting, an appellate court should not disturb the trier of fact’s reasonable evaluation of one set of witnesses as credible, and its consequent rejection of the testimony of the opposing set of witnesses; nor should we disturb the trier of fact’s reasonable factual inferences drawn from such testimony found by it to be credible. Billiot v. Bourg, 338 So.2d 1148, 1152 (La.1976)....’
Boullion v. Romero, 490 So.2d 788 (La.App. 3rd Cir.1986) at 789.
Another panel of this court reminded us that we are not free to substitute our own evaluations of facts for that of the trier of fact where, in T and G Salvage, Inc. v. Port Petroleum, Inc., 496 So.2d 1386 (La.App. 3rd Cir.1986), the court stated:
‘As a reviewing court, we must give great weight to the factual findings and conclusions of the trier of fact, the judge, and where there is a conflict in testimony, the reasonable evaluations of credibility and the reasonable inferences of fact reached by a judge or jury shall not be disturbed. This rule must be followed even though the appellate court may feel that its own evaluations and inferences are just as (or more) reasonable. Thomas v. Missouri-Pacific R. Co., 451 So.2d 1152 (La.App. 3d Cir.1984)....’”
We find no manifest error in the trial judge’s evaluation and reasoning. Plaintiff simply failed to prove its case by a preponderance of the evidence.
Accordingly, for the foregoing reasons, the judgment of the trial court is affirmed. All costs of this appeal are assessed against plaintiff-appellant.
AFFIRMED.