YELVERTON, Judge.
This is an appeal by the surviving spouse and four children from a judgment in their favor resulting from the wrongful death of Edgar Steers. The deceased met his death one night when he ran into a tractor/trailer which was illegally attempting a U-tum, and which presented to oncoming traffic an unlighted side view. The trailer which deceased struck was owned by International Paper Company, a defendant. The plaintiffs complain on this appeal that the jury erred in failing to find that the International Paper Company semi-trailer was defective. Plaintiffs also complain that the jury erred in not finding that Curtis Vercher, the driver of the tractor/trailer, was an employee of International Paper Company at the time of the accident. They complain also of certain prejudicial findings and rulings pertaining to insurance coverage. Finally, they complain that the jury awards of general damages ($50,000 to the surviving spouse and $20,000 each to the four children) were insufficient.
American Motorists Insurance Company also appealed, assigning as error the trial court’s determination that coverage existed under its policy for Curtis Vercher, the driver of the tractor/trailer.
We find that prejudicial instructions to the jury requires setting aside the verdict as to quantum. This court makes an independent award of damages. In all other respects, the judgment is affirmed.
FACTS
Curtis Vercher, driving a tractor owned by Mike Tibbett, a hauling contractor, and pulling a trailer owned by International Paper Company, was travelling east on Louisiana Highway 28 at 6:00 a.m., February 18, 1985. He attempted a U-tum on the highway. Halfway through the turn the tractor got stuck on the north shoulder of the road. The trailer, immobilized, extended across the highway and totally blocked the westbound lane, and partially obstructed the eastbound lane. It was still dark and Vercher did not set out any lighting devices warning of this trap. The trailer had no side lights.
*1238 At that time, Edgar Steers, an employee of Natchez Equipment Company, was driving to work in his pickup truck in the eastbound lane. He saw the stalled trailer too late, tried to stop, slid under the trailer, and was killed. Steers’ widow and four children filed suit.
Among the parties named as defendants in the suit were (1) Curtis Vercher, the driver of the tractor/trailer, (2) his employer, Mike Tibbett, (3) South Central Insurance Company, liability insurer of Vercher and Tibbett, (4) International Paper Company, and (5) its insurer, American Motorists Insurance Company. The petition alleged that Vercher was negligent, that the trailer was defective, and that Vercher and Tib-bett were agents or employees of International Paper Company.
At trial, the jury found that Vercher was 99% at fault, Steers was 1% at fault, and International Paper was not at fault at all. The jury awarded Shirley Steers, Edgar’s widow, $200,000 in special damages and $50,000 in general damages, and $20,000 to each of their four major children, all subject to a reduction of one percent on account of the negligence of Steers as apportioned by the jury. Special damages in the amount of $5,218.25 were stipulated. The trial court ruled that American Motorists Insurance Company provided liability coverage for Vercher and Tibbett, for damages in excess of $250,000.
PLAINTIFF’S FIRST ASSIGNMENT OF ERROR
This assignment pertains to proof of the independent fault of International Paper Company.
The jury found, in response to a specific interrogatory, that the trailer furnished by International Paper Company was not defective. The interrogatory, though poorly worded, was designed to elicit from the jury a finding as to whether the trailer was defective at the time of the transfer of its possession from International Paper to Tib-bett and Vercher. Appellants contest this finding of fact.
The evidence shows that the trailer was defective at the time of the accident, in that it did not have properly functioning side lights. Side lights are required by law, La.R.S. 32:308. The absence of side lights was clearly a cause in fact of the accident. However, the evidence was in conflict as to whether the defective condition existed before the transfer of the tractor/trailer from International Paper to Tib-bett and Vercher. The jury apparently found that this structural defect arose after the transfer of the trailer from International Paper Company to Tibbett and Vercher. An owner of a thing who transfers its possession, but not its ownership to another, continues to have the garde of its structure and is obliged to protect others from damage caused by structural defects arising before the transfer. Ross v. La Coste de Monterville 502 So.2d 1026 (La.1987). The essential fact question the jury had to decide was whether this structural defect arose before or after the transfer. Tibbett testified that when he got possession of the trailer the side lights were working and that they worked for sometime thereafter. Vercher, the driver, testified that they had never worked since he had operated the tractor/trailer. This presented a conflict of testimony, and we cannot disturb a reasonable inference of fact made by a jury unless it is clearly wrong. T & G Salvage, Inc. v. Port Petroleum Inc., 496 So.2d 1386 (La.App. 3rd Cir.1986). We find no clear error in the jury’s determination that the defect in the lighting system arose after the transfer. Consequently, the finding that the trailer furnished by International Paper was not defective was correct.
PLAINTIFF’S SECOND ASSIGNMENT OF ERROR
The jury found that Curtis Vercher was not an employee of International Paper at the time of the accident. As their second assignment of error, plaintiffs contend that this finding of fact was wrong.
The evidence shows that there was a pulpwood and wood chip hauling contract between Tibbett and International Paper. Vercher worked for Tibbett. International *1239 Paper exercised no actual supervision or control over Vercher, nor did it have any contractual right to control the work done by him. We said in Hemphill v. State Farm Insurance Company, 472 So.2d 320 (La.App. 3rd Cir.1985):
Masters and employers are answerable for the damages occasioned by their servants, in the exercise of the functions in which they are employed. La.C.C. Art. 2320. A determination as to whether a person’s status is that of independent contractor, in which case there is no vicarious liability, or that of mere servant, in which case the employer is vicariously liable for the torts of his employee, depends in great measure upon whether and to what degree the right to control the work has been contractually reserved by the principal. The supervision and control which is actually exercised by the principal is less significant.
The contract executed between International Paper Company and Mike Tibbett reveals that there was no contractual reservation of control over Tibbett by International Paper. The contract explicitly states: “Neither CONTRACTOR nor his servants, agents, employees or subcontractors shall be subject to any orders, supervision or control of INTERNATIONAL.”
Considering the jurisprudence, the wording of the contract, and the facts, the trial court was not clearly wrong in finding that Curtis Vercher was not an employee of International Paper.
PLAINTIFF’S THIRD ASSIGNMENT OF ERROR
This assignment of error complains of the court’s handling of revelation of insurance information to the jury. We find merit in this assignment.
Plaintiffs originally sued South Central Insurance Company as the liability insurer of Tibbett and Vercher. By a second supplemental and amending petition in April 1986 plaintiffs added American Motorists Insurance Company as the liability insurer of International Paper Company, owner of the trailer. Accordingly, when the case went to trial both of these insurers were defendants in the case. (South Central had settled but was not dismissed.) American Motorists Insurance Company provided excess liability coverage on the trailer in the amount of $750,000, with a $250,000 deductible. South Central Insurance Company provided limits of $100,000.
Before trial International Paper Company and American Motorists Insurance Company moved in limine for an order prohibiting the disclosure of coverage and all references to the policy limits of American Motorists Insurance Company in the presence of the jury. Although there is no ruling in the record, we assume that the court, off the record, instructed counsel not to mention the policy or the limits because no mention of insurance was made to the jury in closing arguments or at any other time. In fact, nowhere in the record does it appear that the jury was ever made aware that American Motorists Insurance Company was even a defendant in the lawsuit.
The record shows that the jury had trouble with the jury instructions. They asked for help from the trial court twice. The first time, they expressed concern over their understanding of the possible employment relationship between International Paper and Tibbett. The trial judge gave them additional instructions on this subject. The jury went back into its deliberation and quickly resolved that issue (the verdict sheet shows it found International Paper was not responsible).
Ten minutes later they were back with a question about the last interrogatory, # 6, which called for the amount of damages. Two jurors, Mr. Jones and another, unidentified juror, handled the colloquy with the court. This is what went on:
BY MR. JONES: Okay, what my question and what the jury’s question is, after we have found a percentage of guilt, this money that we’re going to fill in these blanks, this ... this ... this suit is against South Central Insurance Company. Who do they represent in this case?
BY THE COURT: All right, South Central Insurance Company, as I told you at the beginning, is represented by Mr. Terry Soileau. That company has paid its *1240 policy limits and it’s no longer a part of this suit.
BY MR. JONES: All right, so ...
BY THE COURT: That company insured Mr. Tibbett because that policy provided that the insured would be given a defense as well as payment of up to the policy limits but South Central is no longer a part of this suit.
BY MR. JONES: That policy has been paid in full?
BY THE COURT: It’s been paid.
BY MR. JONES: Could the court tell us what was paid?
BY THE COURT: I can’t tell you that.
BY MR. JONES: Uh ...
BY THE COURT: All right, now ... now here’s something else. The amount that you fill out is to be for the total amount that you think they’re entitled to, the total amount, and then the court ... I will make the proportionate amount against each defendant that you find at fault and I will also subtract what South Central has already paid from the total amount, see, so all you’re supposed to do is find out the total amount of damages that you award each plaintiff and then I will do the division and subtraction and ... and give credits where they’re due and I’ll make the percentage awards.
BY MR. JONES: Is there anyone else can pay besides South Central Insurance Company?
BY THE COURT: I might not understand that question. You mean that’s not a party here today?
BY MR. JONES: Right.
BY THE COURT: No.
BY MR._: Could ... could I ask a question?
BY THE COURT: All right.
BY MR._: I assume that the insurance company’s already paid their limits and International Paper is also in question here. Is there anyone else that could pay in this situation?
BY THE COURT: Yes, there is another defendant. There’s ... Mr. Ron Fioren-za represents a company that may have to indemnify International Pacific [sic] depending on the contract arrangement and the terms of his policy and I have to figure that out.
BY MR_: All right.
BY THE COURT: It’s ... now it’s a confusing c^se.
BY MR. _: Could I approach the bench and tell you the situation and ask you what to do or do you want me to just tell it like it is and ...
BY THE COURT: Well, I’m not sure what do I do in that situation.
BY MR. McLURE: Your Honor, I’m not so sure that they ought just to deliberate here in the ... in the ...
BY THE COURT: Yeah.
BY MR.-: All right, I understand. I ... we can take care of it.
BY THE COURT: Let me ... let me say this. The figure you put here is to be what you feel the total damages are.
BY MR._: No matter who pays it.
BY THE COURT: Huh?
BY MR._: No matter who pays it.
BY THE COURT: No matter who pays it.
BY MR._: Okay, sir.
It is apparent from reading this exchange that the trial court, as the unfortunate result of having to enforce its own order, gave the jury only part of the insurance facts. Assuming that American Motorists was correct in its fears that disclosure of coverage and limits to the jury would be prejudicial, it follows logically that disclosure to the jury that another insurer had paid its policy limits to the plaintiffs was likewise prejudicial, only this prejudice operated against the plaintiffs. Having taken a position that the jury would not be informed concerning insurance, consistency required that the trial judge also conceal the fact that South Central provided insurance and that its coverage had already been paid to the plaintiffs in full. To make matters unwittingly worse, when the court was specifically asked “Is there anyone else that could pay in this situation?”, the court did not tell the jury about American Motorists and its policy. The court could have told the jury that *1241 American Motorists provided coverage without telling them what the limits were.
The judge mentioned another insurance company though not by name. This insurance was Pacific Marine Insurance Company, mentioned as a possible source of who “could pay in this situation”. Ironically, Pacific Marine’s role in the case was only as a possible indemnitor of a portion of what American Motorists, as the insurer of International Paper, might have to pay. The trial court never mentioned American Motorists to the jury.
Apparently sensing in his above colloquy with the jurors that the waters were becoming choppy, the trial judge sought to keep the boat on an even keel by admonishing the jury to fill in the blank spaces by what it felt the total damages were, no matter who paid the damages. That cautionary instruction is a variation on a charge routinely given in the courts of this state, to the effect that a jury should look at the evidence and base its award on the evidence and not on who is suing or who is sued. However, whether that cautionary instruction was efficacious in this case is open to debate, because it has now been determined by the Louisiana Legislature that the communication to a jury of the amount of insurance coverage is so prejudicial that it is forbidden. Presumably, the amount of insurance coverage is information too risky to entrust to a jury, regardless of a cautionary instruction.
Before the Louisiana Code of Evidence went into effect January 1, 1989 (Act 515 of 1988), the law was unclear as to whether it was proper to communicate the amount of insurance coverage to the jury. The third circuit had ruled both ways. The case of Ponder v. Groendyke Transport, Inc., 454 So.2d 823 (La.App. 3rd Cir.1984), writ den. 457 So.2d 1198 (La.1984), held that it was error to permit policy limits to be disclosed to the jury. To the contrary, the cases of Bishop v. Shelter Insurance Company, 461 So.2d 1170 (La.App. 3rd Cir.1984), writ den. 465 So.2d 737 (La.1985), and Andrews v. Mosley Well Service, 514 So.2d 491 (La.App. 3rd Cir.1987), writ den. 515 So.2d 807 (La.1987), held that it was proper to inform the jury of the policy limits. Insurance companies argued, as American Motorists asserted in its motion in limine in the present case, that such disclosure was “extremely prejudicial”. The argument must have prevailed with the legislature, for in its enactment of the Code of Evidence in 1988, the legislature included Article 411, which declares:
Although a policy of insurance may be admissible, the amount of coverage under the policy shall not be communicated to the jury unless the amount of coverage is a disputed issue which the jury will decide.
We must now assume that disclosure of policy limits will have a prejudicial effect on insurance defendants, because the practice has been legislatively condemned. Although the law was not in effect when this case was tried, given the state of the jurisprudence on the subject it would be difficult to hold that the trial judge was clearly wrong in concluding that the policy limits should not go to the jury. However, if for reasons of prejudice American Motorists was entitled to be protected by concealment in this case not only of its policy limits, but also of the very fact of coverage, then it stands to reason that the plaintiffs were entitled to equal protection against the disclosure to the jury that the plaintiffs had settled with, and been paid the policy limits by the only insurer (so the jury was told) in the case, and the only party that had any money. Moreover, the jury was given this information by the judge himself, in response to a jury question concerning the damages interrogatory on the jury form, only ten minutes before it reached its verdict. Given the apparently now accepted proposition that juries are easily swayed by information concerning insurance, it would be hard for anyone to make a credible argument, or even one with a straight face, that the plaintiffs were not seriously prejudiced when the trial court disclosed damaging insurance facts and at the same time withheld beneficial insurance facts. Indeed, the trial court’s denial that there was “anyone else that could pay” was not even true. American Motorists was a defendant in the lawsuit, *1242 and it could pay. The incompleteness and the inaccuracy of the trial court’s response added to the prejudice to the plaintiffs.
We hasten to say that our comments are not to be considered as criticism of the trial court, express or implied. The trial judge was placed in a nearly impossible situation. The uncertainty in the law, the necessity that he adhere to his own earlier in limine ruling, the unexpectedness of the jury’s interruption of their deliberation and the nature of their question—these and other complexities contributed to a difficulty which this reviewing court, and anyone else who has ever participated in a protracted and complicated trial, can fully appreciate. Nevertheless, an injustice, however unwitting and unintended, was done, and it must be corrected.
We believe that this error was sufficient to vitiate the verdict of the jury as to damages. We accordingly disregard the verdict as to damages. There is no need to remand. The record is before us. We will make an independent determination of damages. Gonzales v. Xerox Corp., 320 So.2d 163 (La.1975).
Edgar Steers was 49 years old at the time of his death. He had a statistical life expectancy of 25.6 years and a work life expectancy of 13.1 years. Dr. Jan Duggar, an expert economist, testified that the total economic loss suffered by Shirley Steers, the deceased’s widow, due to the death of Edgar Steers was, at a minimum, $228,734.80. We add to this figure the cost to Shirley Steers for the funeral home, $4,449.00, flower shop, $134.25, and Greenwood Memorial Park, $635.00, and award special damages of $233,953.05.
Regarding general damages, a review of the particular circumstances of this case shows that Mr. and Mrs. Steers were married in 1960. They had four children. Mr. Steers was very active and involved with his family life. It had been a continuous and close relationship for 25 years. He had coached various sporting activities in which his children participated. He taught Sunday school. After his children reached 18 he often hunted with them. Their youngest child was preparing to go away to college and Mr. and Mrs. Steers were looking forward to spending the rest of their lives alone together. She was 44. We find that she is entitled to $125,000-for the loss of love, affection, and companionship of her husband, and that each of the children is entitled to a general damage award of $50,000. Taking into account the one percent fault the jury found as to Mr. Steers, we render judgment in Mrs. Steer's favor in the amount of $355,363.52, and in favor of each child in the amount of $49,-500.
PLAINTIFF’S FOURTH ASSIGNMENT OF ERROR
Counsel for Steers contends that the trial judge erred in allowing the deductible in the policy of American Motorists Insurance Policy. In his reasons for judgment (concerning coverage questions) the trial judge found that the $250,000 deductible provided in the policy was enforceable and held that of the judgment (after the one percent adjustment) against Vercher, American Motorists was liable only for the excess over $250,000.
The Deductible Liability Endorsement provides as follows:
I. The company’s obligation to pay damages on behalf of the insured applies only to that amount of the limit of liability that remains after the deduction therefrom of the Deductible Amount stated herein.
II. The Deductible Amount applies to all damages for all coverages combined as a result of any one occurrence. Deductible Amount: $250,000. each occurrence INCLUDING ALLOCATED CLAIM EXPENSE RELATED THERETO.
The language used in the policy regarding the deductible amount is clear and unambiguous. The trial judge was correct in applying the deductible provision.
AMERICAN MOTORISTS’ ASSIGNMENT OF ERROR
This is a coverage issue concerning which the trial judge gave written reasons *1243 for judgment, which we approve and quote as follows:
1. Did the policy of insurance issued by American Motorist Insurance Company to International Paper provide coverage for Curtis Vercher while pulling the semi-trailer owned by International Paper?
[[Image here]]
The answer to the first question is yes. The insuring agreement of the policy provides as follows:
‘to pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages ... because of:
a) bodily injury, personal injury or property damage.
b) ...’ (emphasis supplied)
INSURED is described in the policy as:
(1) With respect to the ownership, maintenance, operation, use, loading and unloading of an automobile;
(a) the named insured;
(b) ...
(c) Any other person while using an owned or hired automobile with the permission of the named insured provided his actual operation ... is within the scope of such permission, but with respect to the loading and unloading thereof, such personal [sic] shall be an insured only if he is:
(i) A lessee or borrower of the automobile, or;
(ii) An employee of the named insured or of such lessee or borrower.
An AUTOMOBILE is described in the policy as:
‘... a land motor vehicle, trailer, or semi-trailer, (including equipment towed thereby or carried thereon), designed for travel on public (roads) but does not include any vehicle: (a) not subject to motor vehicle registration or (b) designed for use principally off public roads.'
There is no question but that the trailer being towed by Vercher at the time of the accident fit into the above description of an ‘Automobile’, and that Vercher was using the trailer within the scope of the permission given by International Paper. Vercher was therefore an ‘insured’ under the terms of the policy. Under the ‘insuring agreement’ of the policy American Motorist agreed to pay on behalf of the Insured all sums which the Insured becomes liable to pay ... because of bodily injury, etc....
American Motorist argues that this agreement is limited by the exclusions to the policy which provide in part as follows:
EXCLUSIONS
(h) to any liability arising out of the conduct of any persons or entities not described in the Definition of the Named Insured.
The definition of Named Insured is as follows:
‘The words “Named Insured” whenever used in this policy shall mean the legal entity named in Item 1 of the Declarations and also any subsidiary or affiliated company or corporation of such ... or any organization or association of employees of any named insured ...’
Item 1 of the Declarations page referred to in the above definition of Named Insured lists only ‘International Paper Company’ as the Named Insured. As Vercher was not the ‘Named Insured’ under the above description and declaration, American Motorists argues that he is excluded from coverage under the policy-
By the same reasoning, it could be argued that any officer or employee of the company using a company vehicle would be excluded from coverage under this provision of the policy. Yet there are other provisions under ‘Exclusions’ where employees are specifically excluded from coverage under certain circumstances. It is at the least inconsistent to exclude employees from certain designated activities and then generally exclude all employees for all acts. It is likewise inconsistent and certainly ambigious [sic] to agree to pay all sums which the ‘In *1244 sured becomes obligated to pay’ and then exclude all those who are described as Insureds. Under Louisiana law, any ambiguity in an insurance contract which could have the effect of denying coverage is interpreted as affording coverage. Likewise, Louisiana law provides that any ambiguity in a written instrument is resolved against the draftsman, in this case, American Motorist Insurance Company. Accordingly, the policy is interpreted to provide coverage for Vercher under the circumstances of this case.
For the foregoing reasons, the judgment of the trial court is affirmed in all respects except damages, and this court now renders judgment in favor of Shirley Steers for $356,137.45 and in favor of each of the four children of the deceased in the amount of $49,500, all sums to bear interest at the legal rate from judicial demand, and costs.
JUDGMENT AMENDED, AND AS AMENDED, AFFIRMED.